DOROTHY BETTS, Indiv. and as Adm'r of the Estate of Elijah Betts, Deceased, *et al.*, Plaintiffs-Appellees, v. MANVILLE PERSONAL INJURY SETTLEMENT TRUST, Defendant-Appellant (Joseph Babb *et al.*, Plaintiffs; Unarco Industries, Inc., *et al.*, Defendants; Raybestos-Manhattan, Inc., Third-Party Plaintiff; Unarco Industries, Inc., Third-Party Defendant).— JUAN MENDIOLA *et al.*, Plaintiffs-Appellants, v. MANVILLE PERSONAL INJURY SETTLEMENT TRUST *et al.*, Defendants-Appellees (John D. Spicer *et al.*, Plaintiffs; Elizabeth Cryor *et al.*, Defendants).— WILHA DIETRICH *et al.*, Plaintiffs-Appellees, v. GREFCO, INC., Defendant-Appellant and Third-Party Plaintiff-Appellant (Joseph Babb *et al.*, Plaintiffs; Manville Personal Injury Settlement Trust *et al.*, Defendants; Raybestos-Manhattan, Inc., Third-Party Plaintiff; Unarco Industries, Inc., Third-Party Defendant; Wedron Silica Company *et al.*, Third-Party Defendants-Appellees).—DOROTHY BETTS, Indiv. and as Adm'r of the Estate of Elijah Betts, Deceased, *et al.*, Plaintiffs-Appellants, v. MANVILLE PERSONAL INJURY SETTLEMENT TRUST *et al.*, Defendants-Appellees (Joseph Babb *et al.*, Plaintiffs; Unarco Industries, Inc., *et al.*, Defendants; Raybestos-Manhattan, Inc., Third-Party Plaintiff; Unarco Industries, Inc., *et al.*, Third-Party Defendants).

Fourth District Nos. 4—91—0046, 4—91—0057, 4—91—0066, 4—91—0090 cons.

Opinion filed February 27, 1992.—Modified on denial of rehearing April 8, 1992.

Margaret S. Garvey and Steven M. Hartmann, both of Freeborn & Peters, of Chicago, for Manville Personal Injury Settlement Trust.

James C. Craven and Donald M. Craven, both of James C. Craven, P.C., of Springfield, and J. Timothy Eaton and Shelley Rice Weinberg, both of Coffield, Ungaretti, Harris & Slavin, of Chicago, for Grefco, Inc.

Edward M. Crane, Matthew M. Neumeier, and Mark Parts, all of Skadden, Arps, Slate, Meagher & Flom, of Chicago, for Wedron Silica Company.

James Walker, Ltd., of Bloomington, for Dorothy Betts, Chlora Skinner, John V. Handley, Robert Day, Lee E. Hayes, Delora Stewart, Ethel M. Babb, Betty J. Redman, Gladys Nevius, Juan Mendiola, Sarita Mendiola, Wilha Dietrich, Dewey Durbin, Margaret Harmon, Robert Van Dorn, Joseph I. Finfrock, Jerry Heck, R.E. Deitz, Walter Lehr, Mary Smith, Vernadine T. Thacker, and William J. Dugan.

JUSTICE McCULLOUGH delivered the opinion of the court:
These consolidated appeals arose from the determinations of the circuit court of McLean County in consolidated multiparty actions seeking damages for personal injuries, wrongful death, and loss of

consortium allegedly resulting from exposure of workers at the Bloomington, Illinois, factory owned by Union Asbestos and Rubber Company (UNARCO) to asbestos or diatomaceous earth (McLean County case Nos. 79–L–147, 80–L–93, 81–L–206, 84–L–129, and 86–L–112). The cases were tried on theories of negligence and strict liability. It is alleged the asbestos was sold by Johns-Manville Corporation or related entities. As a result of bankruptcy court proceedings, the Manville Personal Injury Settlement Trust was established as a means to satisfy claims due to exposure to Johns-Manville asbestos. For purposes of litigation, the trust is identified as the Manville Corporation Asbestos Disease Compensation Fund (Fund). The Fund was substituted as party defendant for the Johns-Manville Corporation and its affiliated entities. The diatomaceous earth was allegedly sold by defendant Grefco, Inc.

In this consolidated appeal, the following plaintiffs appeal in No. 4–91–0090 from adverse rulings in the trial court: Mary Smith, administrator of the estate of Wesley Smith, deceased, and individually; Ray Deitz; Walter Lehr; John Handley; Juan Mendiola; Sarita Mendiola; William Dugan, administrator of the estate of Merle Dugan, deceased; Wilha Dietrich; Margaret Harmon, administrator of the estate of Thomas Harmon, deceased; Vernadine Thacker, administrator of the estate of Charles Thacker, deceased, and individually; Dorothy Betts, administrator of the estate of Elijah Betts, deceased, and individually; Chlora Skinner, administrator of the estate of Robert Skinner, deceased, and individually; Ethel Babb, administrator of the estate of Joseph Babb, deceased, and individually; Gladys Nevius, administrator of the estate of Ernest Nevius, deceased and individually; Betty Redman, administrator of the estate of George Redman, deceased; Delora Stewart; Robert Day; and Lee Hayes.

This court has further designated as No. 4–91–0057 Juan and Sarita Mendiola's appeal from an adverse decision in McLean County case No. 81–L–206.

In No. 4–91–0066, Grefco appeals from judgments entered in favor of Robert Day; John Handley; Lee Hayes; Wilha Dietrich; Dewey Durbin; Joseph Finfrock; Jerry Heck; Margaret Harmon, administrator of the estate of Thomas Harmon, deceased, and individually; Delora Stewart; and Robert Van Dorn. Grefco also seeks review of the judgment entered in favor of third-party defendants Wedron Silica Company (Wedron) and the Fund on Grefco's claim for contribution and of the denial of Grefco's motion for summary judgment on the grounds that Grefco is legally responsible for the acts of Great Lakes Carbon Company (GLC).

In No. 4—91—0046, the Fund appeals from the judgments entered in favor of John Handley; Robert Day; Lee Hayes; Ethel Babb, administrator of the estate of Joseph Babb, deceased, and individually; Betty Redman, administrator of the estate of George Redman, deceased, and individually; Gladys Nevius, administrator of the estate of Ernest Nevius, deceased and individually; Dorothy Betts, administrator of the estate of Elijah Betts, deceased, and individually; Chlora Skinner, administrator of the estate of Robert Skinner, deceased, and individually; and Delora Stewart.

The respective parties to this appeal raise several issues for this court's consideration, *i.e.*, whether reversible error occurred in any or all of the following ways: (1) granting summary judgment to defendants with regard to the alleged injuries of Wesley Smith on the ground that the cause of action was barred by the statute of limitations; (2) refusing plaintiffs' tendered instruction on Grefco's failure to produce a witness; (3) allowing Grefco to call as an expert witness a person disclosed as an expert in a letter dated September 7, 1989, even though the extended order of disclosure of expert witnesses expired on that date; (4) refusing to strike the testimony of Jerome Wiot, or to declare a mistrial, based on a violation of Supreme Court Rule 220 (134 Ill. 2d R. 220); (5) dismissing Wilha Dietrich's action against the Fund based on collateral estoppel and the statute of limitations; (6) giving to the jury a special interrogatory tendered by Grefco regarding whether the lung disease of Deitz and Lehr was proximately caused by exposure to diatomaceous earth supplied to UNARCO by Grefco or GLC; (7) restricting the plaintiffs' examination of Gregg Smith, a Fund employee, and Dr. Thomas Davison, formerly a chief medical officer of the Johns-Manville Waukegan plant and corporate medical director of the Johns-Manville Corporation; (8) directing a verdict in favor of defendants on the claimed injuries of Juan Mendiola; (9) allowing the Fund to assert a defense of assumption of risk against Handley's claim for injury; (10) allowing as a setoff against the judgment in favor of Stewart for loss of consortium due to the asbestosis of her husband William earlier settlements entered into between the estate of William Stewart and other tortfeasors; (11) the failure of any or all of the plaintiffs to prove that asbestos supplied by Johns-Manville proximately caused the plaintiffs' injuries; (12) allowing the jury to consider evidence that plaintiffs were at an increased risk of cancer over an objection that such evidence was speculative; (13) striking, as a matter of law, the Fund's defense that UNARCO's conduct was a superseding cause of plaintiffs' injuries; (14) instructing the jury with regard to the Fund's statute of limita-

tions defense against the claim of Handley and refusing to grant the Fund a directed verdict against Handley on the basis of the statute of limitations; (15) permitting the expert testimony of Dr. Susan Daum into evidence in violation of Supreme Court Rules 219 and 220 (134 Ill. 2d Rules 219, 220); (16) admitting evidence of conditions at the Johns-Manville plant in Waukegan through the testimony of three former Johns-Manville employees over objections to the relevance of such evidence; (17) denying the Fund a fair trial by trial tactics employed by plaintiffs' counsel calculated to prejudice the jury against the Fund; (18) ruling that Grefco was collaterally estopped from contesting the following facts: (a) fibrosis of the lungs is caused by exposure to diatomaceous earth; (b) Grefco knew, before distributing diatomaceous earth to the UNARCO plant, that exposure to diatomaceous earth causes fibrosis; (c) Grefco distributed diatomaceous earth to the UNARCO plant; (d) Grefco was responsible for the sale of diatomaceous earth by GLC to UNARCO; and (e) Grefco was negligent in failing to warn of the hazards of exposure to diatomaceous earth and particularly the risk of fibrosis of the lungs by failing to place warnings on bags of diatomaceous earth supplied to UNARCO from 1953 to 1967; (19) refusing to grant Grefco a judgment *n.o.v.* based on plaintiffs' failure to prove that exposure to Grefco's product was a substantial factor in causing plaintiffs' injuries or that Grefco's product was the medical cause of plaintiffs' injuries; (20) the verdicts against Grefco are excessive and unsupported by the evidence such that they should be remitted or a new trial awarded; (21) refusing to sever the plaintiffs' claims against Grefco for trial; (22) striking the testimony of Dr. Robert Jones, Grefco's expert witness, based on a violation of Supreme Court Rule 220(c)(3) (134 Ill. 2d R. 220(c)(3)), particularly in light of the fact that the trial court conceded in ruling on the post-trial motion that it erred in striking the evidence as to some of the plaintiffs; (23) admitting into evidence plaintiffs' exhibit Nos. 44, 45, and 46 (newspaper and magazine articles), plaintiffs' group exhibit No. 3 (reports from the Johns-Manville plant in Waukegan regarding occupational diseases at the plant), and plaintiffs' exhibit No. 51 (a document purporting to state the ingredients used to make Unarcoboard), or whether the cumulative effect of these errors denied Grefco a fair trial; (24) striking the following affirmative defenses raised by Grefco: (a) plaintiffs were contributorially negligent because of their cigarette smoking; (b) the scientific and industrial communities did not recognize a risk from exposure to diatomaceous earth at the time of plaintiffs' exposure, thereby relieving Grefco of a duty to warn; (c) plaintiffs' employer was a sophisticated user of diatomaceous

earth and, therefore, Grefco had no duty to warn; and (d) the actions of UNARCO were a superseding cause of plaintiffs' injuries; (25) dismissing Grefco's third-party complaint for contribution against the Fund and Wedron; (26) refusing to rule that any or all of plaintiff's claims were barred by the statute of limitations; and (27) denying Grefco's motion for summary judgment made on the ground that GLC, and not Grefco, was responsible for supplying diatomaceous earth to the UNARCO plant during the period 1953 to mid-1966, pursuant to the terms of a March 24, 1966, agreement between Grefco's parent corporation and GLC and assignments from the parent corporation to Grefco.

The record in these cases is voluminous. For this reason, and because the parties are familiar with the facts of this case, only those facts necessary for the disposition of each issue will be discussed as the issue is analyzed.

## I. DISMISSAL OF GREFCO'S THIRD-PARTY COMPLAINT FOR CONTRIBUTION AGAINST THE FUND AND WEDRON

■■ The first issue to consider is raised by Grefco in No. 4—91—0066, *i.e.*, whether the trial court erred in dismissing Grefco's third-party complaint for contribution against the Fund and Wedron premised on the products supplied to UNARCO by third-party defendants. In addition to the asbestos supplied by companies covered by the Fund, Wedron was alleged to have supplied silica flour, a fibrogenic form of crystalline silica. The Fund and Wedron moved to dismiss the third-party action on the ground that plaintiffs' exposure to their products predates the March 1, 1978, effective date of the Illinois Contribution Act (Act) (Ill. Rev. Stat. 1989, ch. 70, par. 301 *et seq.*).

In *People v. Brockman* (1991), 143 Ill. 2d 351, 366, 574 N.E.2d 626, 631, the Act was discussed. The Illinois Supreme Court noted the Act applies only to "causes of action arising out of occurrences on and after March 1, 1978." (*Brockman*, 143 Ill. 2d at 369, 574 N.E.2d at 633, citing Ill. Rev. Stat. 1987, ch. 70, par. 301 and *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437.) *Brockman* conclusively decided that if the wrongful occurrence did not take place on or after March 1, 1978, no right to contribution exists. The dismissal of the third-party complaint is affirmed.

## II. ISSUES RAISED BY PLAINTIFFS

In an attempt to organize this disposition in an understandable

fashion, we will next address the 10 issues raised by the plaintiffs before considering issues raised by the Fund or Grefco.

### A. *Propriety of Dismissing Wilha Dietrich's Action Against the Fund Based on Collateral Estoppel and the Statute of Limitations*

■ The second issue which will be considered is raised by plaintiff Wilha Dietrich in No. 4—91—0090, *i.e.*, whether the dismissal of her action against the Fund based on collateral estoppel and the statute of limitations was error. When the granting of a motion to dismiss is reviewed, all well-pleaded facts alleged in the complaint are taken as true, and any allegations which are merely conclusions, unsupported by allegations of specific facts, are not admitted. The test for determining the propriety of granting the motion to dismiss is whether it appears no set of facts may be proved so as to entitle plaintiff to recover from defendant. (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 505-06, 485 N.E.2d 372, 374.) Dietrich alleged she discovered her injury on March 21, 1979. However, section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) allows for the filing of a motion for involuntary dismissal based on defects or defenses enumerated in the statute, and if the ground for dismissal is not evident from the face of the pleading, the motion may be supported by affidavit. (*Toys "R" Us, Inc. v. Adelman* (1991), 215 Ill. App. 3d 561, 564, 574 N.E.2d 1328, 1330.) Prior to trial, the Fund filed a section 2—619 motion to dismiss Dietrich's cause of action on the ground that, in a previous trial involving Dietrich (Dietrich v. North American Asbestos Corp. (Cir. Ct. McLean Co.), No. 79—L—147), her physician, Dr. Albert Van Ness, testified he told her in 1971 that she had fibrosis from exposure to asbestos. In the previous case, Dietrich appealed a judgment entered in favor of North American Asbestos Corporation (NAAC) and the testimony of Van Ness was clearly set forth in this court's disposition. (*Dietrich v. North American Asbestos Corp.* (1987), 157 Ill. App. 3d 1160 (unpublished order pursuant to Supreme Court Rule 23).) If when Dietrich discovered her injury was a material fact in determining whether she could bring the earlier action and, therefore, it has been fully litigated in an action involving Dietrich and she is barred by the doctrine of collateral estoppel from relitigating that fact, the impact on this case is that Dietrich's suit against the Fund, instituted in 1979 in McLean County case No. 79—L—147, is barred by the statute of limitations. The trial judge in the case against NAAC directed a verdict, finding

among other things that Dietrich was told in 1971 she had asbestosis and her cause of action was barred by the statute of limitations.

Collateral estoppel applies when (1) the issue in the former case and pending case is identical; (2) a final judgment on the merits has been rendered by a court of competent jurisdiction in the cause asserted as a bar; and (3) the party against whom estoppel is asserted is the same party or in privity with a party in the first cause, and has had a full opportunity to litigate the issue or question. (*Mohn v. International Vermiculite Co.* (1986), 147 Ill. App. 3d 717, 720, 498 N.E.2d 375, 377; see also *Wolford v. Owens-Corning Fiberglas Corp.* (1988), 176 Ill. App. 3d 312, 314, 530 N.E.2d 721, 722.) The issues are identical, to wit: when did Dietrich know, or through the use of reasonable diligence should she have known, of her personal injury and the wrongful cause thereof. The time of discovery of the injury is a material fact in both cases. It having been determined in the earlier case that Dietrich learned of her asbestosis in 1971, she cannot now relitigate that fact and she is barred by the two-year statute of limitations from bringing a cause of action against the defendants. (Ill. Rev. Stat. 1989, ch. 110, pars. 13—202, 13—213(d).) Dietrich was a party to both actions, she had a full opportunity to litigate the issue in the earlier action, and the trial court made a determination of the fact question. On direct appeal of the earlier case, the judgment was affirmed. (See *Dietrich*, 157 Ill. App. 3d 1160 (unpublished order under Supreme Court Rule 23).) Although the issue presented here was not the basis for the appellate court decision, that does not alter the facts that the trial court in Dietrich v. North American Asbestos Corp. (Cir. Ct. McLean Co.), No. 79—L—147, was a court of competent jurisdiction having authority to make such a finding and did make the finding, and the finding was not overturned on appeal. The dismissal of Dietrich's complaint against the Fund in McLean County case No. 79—L—147 is therefore affirmed in No. 4—91—0090.

### B. *Propriety of Granting Summary Judgment Against Wesley Smith Based on the Statute of Limitations*

Next we consider whether the trial court erred in granting summary judgment to defendants as to the alleged injuries of Wesley Smith on the ground that the cause of action was barred by the statute of limitations, an issue raised in No. 4—91—0090. Summary judgment is a drastic remedy and is appropriate where no genuine issue of material fact exists and the moving party's right to it is clear and free from doubt. In determining the propriety of granting summary judgment, the trial court should construe pleadings, depositions, ad-

missions, exhibits, and affidavits strictly against the movant and liberally in favor of the respondent. Although inferences may be drawn from undisputed facts, an issue should be decided by the trier of fact and summary judgment denied where reasonable persons could draw divergent inferences from the undisputed facts. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 357-59, 543 N.E.2d 1304, 1307-08.) The application of the discovery rule to determine when a party knows or reasonably should have known the injury occurred and it was wrongfully caused such that the statute of limitation begins to run is a question of fact, unless the facts are undisputed and only one conclusion may be drawn from them (*Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171, 421 N.E.2d 864, 868-69), in which case summary judgment will be an appropriate disposition. It is pointed out in *Nolan* that it is unnecessary for the complaining party to know of a particular defendant's negligent conduct in order for the statute of limitations to begin running. Instead, plaintiff should be on notice sufficient to warrant investigating into the cause of the wrongfully inflicted injury. See also *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874.

■ Here, the trial court found that, as to Smith's causes of action, there was no genuine issue of material fact in that Smith was informed of the diseased condition of his lungs more than two years prior to filing suit. Defendants were sued by Smith on May 19, 1980. In Smith's deposition taken on August 6, 1980, Smith stated Dr. Robert Wheaton had been his family doctor for five or six years before he put Smith on sick leave from work in April 1980. Smith first went to see Wheaton for shortness of breath in 1973. He was told X rays revealed scars. The shortness of breath got worse, and he had chest pains "off and on." Wheaton told Smith the scarring was possibly connected with asbestos. Further tests were recommended, but Smith put off the tests because he did not like the traffic conditions in Milwaukee, where the tests were to be conducted. Milwaukee was about 30 miles from his home.

Wheaton gave his evidence deposition on February 21, 1990. Wheaton testified he first saw Smith in February 1974. In interpreting X rays taken in August 1976, the possibility that scarring was involved was noted. At that time, the doctor considered fibrosis, but did not diagnose asbestosis since a biopsy had not been done. He discussed this with Smith in 1977. On a typewritten report of a chest X ray taken on September 22, 1977, Wheaton added a handwritten note "probably asbestosis." To the best of Wheaton's recollection, he informed Smith of the probable asbestosis. On January 3, 1978, on an-

other X-ray report, Wheaton's handwritten note clearly implicated asbestosis as the cause of Smith's lung condition. Wheaton said he would have informed Smith of his impression. Wheaton also confirmed that Smith did not want to drive to Milwaukee for a consultation with a pulmonologist to whom Wheaton wanted to refer him. Wheaton later testified there was no definite diagnosis of asbestosis in 1976 because no biopsy had been done. It is Wheaton's opinion that a lung biopsy must be done to reach a definite diagnosis of asbestosis. The first lung biopsy was done on Smith in April 1979. The results of that biopsy showed Smith had asbestosis. An electronic microscopy was done to confirm the diagnosis. Wheaton received the test results on April 11 and 23, 1979. That was when he related to Smith that he had asbestosis. With regard to the earlier X rays, the reports were uncertain as to the etiology of the scarring, although a fibrosis as opposed to an acute pneumonia was indicated. Until the biopsy was done by a consultant named Dr. Schlueter, Wheaton was referring to Smith's condition as interstitial lung disease because it was undetermined exactly what it was. Wheaton also stated he did not recall telling Smith before the biopsy that Smith had asbestosis.

As related in *Nolan*, the law is that a cause of action arises when a person knows or should know, through reasonable diligence, of the injury *and its wrongful causation*. In this case, Smith was alerted to the fact of injury and to the possibility of its wrongful causation, although the doctor's diagnosis was not absolutely certain in the absence of a biopsy, but Smith would not drive to Milwaukee for further tests by a specialist. Smith was certainly put on notice and, had he pursued the recommended treatment, would have discovered the fact his lung injury was wrongfully caused more than two years before he filed suit in this case. For this reason, the summary judgment in favor of the Fund and Grefco and against Smith in McLean County case No. 80—L—93 is affirmed in No. 4—91—0090.

### C. *Directed Verdict in Favor of the Fund and Grefco as to Injuries of Juan Mendiola*

Next, we consider whether the trial court's directing a verdict in favor of defendants on the claimed injuries of Juan Mendiola was error, an issue raised in Nos. 4—91—0057 and 4—91—0090. At the conclusion of plaintiffs' case in chief, the Fund and Grefco moved for directed verdicts on the causes of action of Juan and Sarita Mendiola (McLean County case Nos. 81—L—206 and 84—L—129) on the ground there was lack of evidence that Juan had been injured from exposure to their products. The trial court denied both motions. At the end of

all of the evidence, both defendants again moved for directed verdict and the trial judge granted the motions indicating he did not believe there was an "expert opinion in evidence" causally connecting Mendiola's illness with exposure to asbestos or diatomaceous earth.

■ The standard for granting a directed verdict is the same as the standard for granting a judgment *n.o.v.* A directed verdict or a judgment *n.o.v.* should be entered only where all of the evidence, when viewed in its aspects most favorable to the opponent to the motion for judgment *n.o.v.*, so overwhelmingly favors the movant that no contrary verdict based on the evidence could stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Dr. Robert Conklin testified he examined and treated Mendiola beginning on September 5, 1980. The examination revealed a "scattered inspiratory rhoncus" in the right lung and a history of coughing up blood intermittently for several months. A biopsy did not reveal the presence of lung cancer, but instead revealed an acute inflammation. The medical history revealed Mendiola was a heavy smoker and had been exposed to asbestos from 1969 to 1970. It was believed the cough was due to bronchitis. Mendiola was treated as an outpatient with aerosol medications and antibiotics. After that, Conklin saw him on October 9 and November 3, 1980, and again on March 12, 1984. When Conklin saw him last, he was overweight and had high blood pressure, but there was no definite evidence of pulmonary asbestosis.

Conklin was allowed to testify, over objection by the Fund, that workers from the UNARCO plant are at an increased risk of bronchial conditions, cancer, and heart failure as a result of exposure to asbestos. The trial judge instructed the jury that this testimony was only to be considered insofar as it related to the cost of medical monitoring of these patients in the future.

There is no mention of exposure to diatomaceous earth in Conklin's testimony. As a result, the directed verdicts in Grefco's favor will be affirmed. In addition, the medical testimony does not establish that Mendiola suffered a present injury from asbestos exposure. There must be a present injury to warrant recovery under Illinois law. (*Morrissy v. Eli Lilly & Co.* (1979), 76 Ill. App. 3d 753, 761, 394 N.E.2d 1369, 1376 (rejecting claims for possible future injury due to exposure).) Accordingly, the directed verdicts in favor of the Fund and Grefco and against Juan and Sarita Mendiola in McLean County case Nos. 81—L—206 and 84—L—129 are affirmed in Nos. 4—91—0057 and 4—91—0090.

### D. *Propriety of Setoff Against Judgment for Delora Stewart Based on Earlier Settlements*

The next of plaintiffs' issues to be considered is that of plaintiff Delora Stewart in No. 4—91—0090, *i.e.*, whether the trial court erred by allowing as a setoff against the judgment in her favor for loss of consortium due to the asbestosis of her husband William based on earlier settlements entered into between the estate of William Stewart and other tortfeasors. The jury returned a verdict in favor of Stewart and against the Fund in the amount of $275,000 in McLean County case No. 80—L—93. Following consideration of the Fund's post-trial motion, the trial court held that the entire amount of Stewart's judgment was subject to a setoff because of earlier settlements between William's estate and other tortfeasors. In December 1987, wrongful death, survival, and loss of consortium causes of action had been settled with NAAC for $400,000. Fifty thousand dollars of the amount was specifically allocated to the wrongful death claim. However, no allocation was made between the survival and loss of consortium causes of action.

As this court has commented, an injured person is entitled to only one fully compensable recovery for his injury. A double recovery for the injury violates public policy. Therefore, a plaintiff cannot be heard to complain that a defendant is entitled to a setoff for damages already recovered by plaintiff. (*Eberle v. Brenner* (1987), 153 Ill. App. 3d 700, 703, 505 N.E.2d 691, 694.) In this case, the problem arises because of the failure to allocate the recovery among the various causes of action in the earlier case.

Both parties cite *McDaniel v. Hoge* (1983), 120 Ill. App. 3d 913, 458 N.E.2d 1063, and *Gramse v. Royal Crest Enterprises, Inc.* (1981), 100 Ill. App. 3d 100, 426 N.E.2d 614. In both cases, the question was whether the trial court *that heard the case* committed an abuse of discretion in allocating a settlement between counts so that workers' compensation liens did not attach. Here, Stewart would have had this trial court allocate her recovery in a different case. That would entail virtually retrying her cause of action against NAAC. The supplemental opinion in *Dick v. Gursoy* (1984), 124 Ill. App. 3d 185, 189a, 471 N.E.2d 195, 199, points out that only where the parties to the settlement have failed to designate the allocation in their settlement agreement is the trial court required to exercise discretion at all to allocate the settlement.

Apparently, the issue of allocation, with the exception of the wrongful death action, never arose in the case against NAAC. The

trial court in this case cannot allocate those funds, and the question here is not whether the trial court committed an abuse of discretion in refusing to allocate.

■ Stewart does not contend the Fund was not entitled to a set-off, but only contends the amount of setoff was not properly calculated. Stewart would have the trial court look to the survival and derivative counts now in the McLean County case No. 80—L—93 to determine the comparison between the average awards on survival and derivative theories. On this basis, Stewart suggests only 27% of the unallocated $350,000 of the 1987 settlement with NAAC should have been applied as a setoff in the case at bar. Of course, the resolution of causes of action against NAAC might have resulted in a vastly different allocation, and the trial court's refusal to proceed on the basis suggested by plaintiffs was proper. Since Stewart failed to agree on an appropriate allocation in the case against NAAC or to have the trial court exercise its discretion therein to determine an appropriate allocation, it is Stewart's burden, and not the Fund's (which is admittedly entitled to some setoff), to establish the entire unallocated $350,000 of the 1987 settlement was not attributable to her cause of action for loss of consortium against NAAC in the earlier case. Under the circumstances presented here, the trial court did not have any alternative but to apply the entire $350,000 as a setoff against the judgment in No. 80—L—93; accordingly, that ruling is affirmed in No. 4—91—0090.

### E. *Propriety of Refusing Plaintiffs' Instruction on Grefco's Failure to Produce a Witness*

The next of the plaintiffs' issues in No. 4—91—0090 to be considered is whether the trial court erred in refusing plaintiffs' tendered instruction on Grefco's failure to produce a witness. Plaintiffs tendered an instruction on the failure of a party to produce a witness based on Illinois Pattern Jury Instruction, Civil, No. 5.01 (Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1991) (hereinafter IPI Civil 3d)). IPI Civil 3d No. 5.01 allows an adverse inference to be drawn from the failure of the party to produce a witness if (1) the witness was under the control of the party and could have been produced with reasonable diligence; (2) the witness was not equally available to an adverse party; (3) a reasonably prudent person under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to him; and (4) no reasonable excuse for the failure to produce the witness has been shown. The trial court refused the instruction even though plaintiffs argued

Grefco failed to call disclosed expert witnesses, including Dr. Clark Cooper, a pulmonologist.

*Thompson v. Abbott Laboratories* (1990), 193 Ill. App. 3d 188, 201-02, 549 N.E.2d 1295, 1304, summarized the standard used for determining when IPI Civil 3d No. 5.01 is appropriate. The giving of IPI Civil 3d No. 5.01 rests in the sound discretion of the trial court, and reviewing courts will reverse only when a clear abuse of discretion is demonstrated. Prior to giving the instruction, the trial court must ascertain whether, in all likelihood, the party would have produced the witness under the facts and circumstances of the case unless the testimony would be unfavorable. For example, if the witness' testimony would be cumulative of facts already established, the instruction is not warranted.

■ In this case, the refusal to give the instruction was not clearly shown to be an abuse of discretion. Plaintiffs point to nothing in the record from which this court can determine that Cooper would have been produced but for the fact that his testimony would have been unfavorable. We decline to require every party to produce every expert it lists as a possible witness in order to avoid the unfavorable inference instruction. We affirm the trial court's ruling on plaintiffs' instruction.

*F. Propriety of Giving Special Interrogatory*
*Regarding the Proximate Cause of*
*Lung Disease in Deitz and Lehr*

We next consider whether the trial court erred in giving to the jury special interrogatories tendered by Grefco regarding whether the lung disease of Deitz and Lehr was proximately caused by exposure to diatomaceous earth supplied to UNARCO by Grefco or GLC, another issue raised in No. 4—91—0090. Grefco's instruction No. 106 was a special interrogatory to the jury regarding Deitz which inquired whether the jurors find that Deitz has a lung disease proximately caused by exposure to diatomaceous earth supplied by Grefco or GLC. Grefco's instruction No. 111 was an interrogatory identical to the Deitz interrogatory, other than the substitution of Lehr's name. In fact, Grefco's instruction Nos. 103 through 114 were all similar except to the individual plaintiff to which they referred. Over plaintiffs' objection, the court gave Grefco instruction Nos. 103 through 114.

Section 2—1108 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—1108) provides for the use of special interrogatories. A special interrogatory is an effective device for testing the jury's comprehension of a case and can serve to clarify and sharpen the jury's consideration of

questions presented by the evidence in the case. (*First National Bank v. Szwankowski* (1969), 109 Ill. App. 2d 268, 275, 248 N.E.2d 517, 521.) Special interrogatories can test the general verdict against the jury's conclusions as to ultimate controlling facts. (*Duffin v. Seibring* (1987), 154 Ill. App. 3d 821, 835, 507 N.E.2d 930, 939.) The terms of the special interrogatory must be capable of being understood by the jury in order to serve its purpose. (See, *e.g., Struthers v. Jack Baulos, Inc.* (1977), 52 Ill. App. 3d 823, 368 N.E.2d 148.) As this court pointed out in *Duffin*, proposed special interrogatories should not be ambiguous and should use the same language or terms as are contained in other instructions so as not to confuse or mislead the jury.

█ Plaintiffs complain that Deitz and Lehr sought damages for "fibrosis of the lungs" and the use of the term "lung disease" in the special interrogatories was misleading and ambiguous. The testimony in the case discussed asbestosis, fibrosis, silicosis, and pneumoconiosis, all diseases of the lungs. The trial court used the term "lung disease" throughout the jury instructions to encompass the claimed injuries of all plaintiffs, even though those instructions also specifically refer to fibrosis, asbestosis, and lung cancer on occasion. However, if the jury found Deitz and Lehr did not have a lung disease proximately caused by diatomaceous earth, that would include fibrosis of the lungs. Plaintiffs do not contend the answers to the special interrogatories are inconsistent with the general verdicts as to Deitz and Lehr. The language employed is not ambiguous or confusing in light of the evidence presented at trial and the other instructions, and the giving of the special interrogatories was not error.

### G. Propriety of Allowing the Fund to Assert an Assumption of Risk Defense Against John Handley's Claim for Injuries

Another issue plaintiff John Handley asks this court to consider is whether the trial court erred by allowing the Fund to assert a defense of assumption of risk against his claim for injury. In this issue, Handley raises three contentions: (1) the Fund's pleading of the affirmative defense of assumption of risk was deficient; (2) the examination of Conklin by the Fund and Grefco was improper in a number of respects; and (3) the trial court improperly instructed the jury as to assumption of risk. The jury returned a verdict for Handley against the Fund, but reduced the verdict by 50%, finding Handley had assumed the risk of injury resulting from exposure to asbestos dust.

### 1. The Pleading of the Affirmative Defense

In the second-amended complaint in cause No. 80—L—93, Handley alleged an action for products liability against the Fund. In that complaint, Handley alleged the Fund knew before it sold any asbestos to UNARCO that exposure to "asbestos particles" caused asbestosis, which was the injury Handley allegedly contracted because of such exposure. Handley also alleged the asbestosis produced by the Fund was so hazardous it should not even be sold. The Fund's eleventh affirmative defense was directed at Handley and Deitz. (In this context, of course, we are only concerned with Handley.) In this affirmative defense, the Fund alleged Handley assumed the risk by working at the UNARCO plant with knowledge that "the dust exposure" was harmful and that he suffered from a lung injury; Handley knew he was breathing "the dust complained of" into his lungs; he was advised by a physician that he suffered from a lung injury and the dust he was breathing at UNARCO was harmful and caused or contributed to the lung injury; notwithstanding this knowledge, Handley continued to work at UNARCO and "voluntarily breath[ed] the dust complained of, although he had the option to take precautionary measures or seek alternative employment."

■ Initially, Handley argues the affirmative defense, as pleaded, improperly asserts that he assumed the risk by failing to obtain alternative employment. However, Handley never moved to strike the affirmative defense on this ground. Nor was this a basis for his argument to the trial court that the affirmative defense should be dismissed, or in the alternative, a verdict should be directed. Instead, Handley only argued that the Fund failed to plead:

> "First, that the plaintiff knew of the condition which the plaintiff claims make the asbestos unreasonably dangerous; second, that the plaintiff understood and appreciated the risk of injury from that condition and proceeded to use the asbestos anyway; third, that the known condition was a proximate cause of the plaintiff's injuries."

Therefore, for purposes of review, Handley has waived his argument that the Fund improperly pleaded failure to seek alternative employment as a basis for the affirmative defense of assumption of risk. In any event, the Fund also pleaded Handley's failure to take precautionary measures so that the affirmative defense would not have been entirely dismissed for the deficiency now asserted anyway. We now consider those contentions which have been preserved for review.

The affirmative defense of assumption of risk operates to reduce plaintiff's recovery by that amount which the jury finds him to have been at fault. The test is subjective in that it is plaintiff's knowledge, understanding, and appreciation of the danger which must be assessed, rather than that of the reasonably prudent person. The defense applies only if the plaintiff is actually aware of the defective nature of the product and appreciates its unreasonably dangerous character, but chooses voluntarily to act in disregard of the known danger. (*Suich v. H & B Printing Machinery, Inc.* (1989), 185 Ill. App. 3d 863, 870, 541 N.E.2d 1206, 1211.) Of course, in assessing the propriety of a ruling on a motion to dismiss a pleading, all well-pleaded facts are taken as true, but conclusions unsupported by alleged facts are disregarded. When pleading affirmative defenses, the requirement of pleading facts still pertains. Ill. Rev. Stat. 1989, ch. 110, par. 2—613(d).

Here, Handley pleaded the product was so hazardous as to be incapable of being safely used. Plaintiff also pleaded the hazardous nature of the product caused injury to him when he breathed the particles. Defendant pleaded plaintiff was told by a physician that he had a lung disease and should stop working around the dust. If these facts are proved, the reasonable inferences therefrom are that Handley knew of the hazardous nature of asbestos, understood and appreciated the health risks associated with continued exposure, and nevertheless voluntarily disregarded the danger. Plaintiff also pleaded that his injury was proximately caused by the hazardous nature of the asbestos.

A defense is affirmative in nature if by raising it the defendant gives color to the plaintiff's cause of action and then asserts new matters which apparently defeat plaintiff's right to remedy. (*Zieger v. Manhattan Coffee Co.* (1983), 112 Ill. App. 3d 518, 533, 445 N.E.2d 844, 855.) So in pleading the affirmative defense, the Fund necessarily acknowledges that the defense applies even assuming plaintiff proves his injuries were proximately caused by the hazardous condition of asbestos. Therefore, in order to plead an affirmative defense, a defendant need not admit the elements of the plaintiff's cause of action are true, but only allege that if plaintiff proves those elements, then plaintiff's right to relief is defeated by new matters, in this case, the assumption of risk. The pleading is not deficient.

### 2. The Examination of Dr. Conklin

As for the sufficiency of the evidence, Handley only contends the defendants were improperly allowed to ask Dr. Robert Conklin a leading question. On one occasion, after Conklin testified he had no recol-

lection as to whom he had given a note he wrote dated June 14, 1967, he was asked, "Well, would Defendant Manville['s] Exhibit [No.] 3 correspond to your normal practice that you follow that you just described?"

It has long been the rule that the manner in which questions are allowed to be put to a witness rests in the discretion of the trial court. (*Mayville v. French* (1910), 246 Ill. 434, 440-41, 92 N.E. 919, 922 (indicating that in that case although some leading questions were allowed, no harm was done to the opposing party).) Plaintiff cites two cases as standing for the proposition that, generally, leading questions are not allowed by the party calling the witness, *i.e., People v. Bennett* (1954), 3 Ill. 2d 357, 365, 121 N.E.2d 595, 599, and *Farmar v. Crane* (1975), 32 Ill. App. 3d 383, 389, 336 N.E.2d 607, 613.

Here the question was not leading. The witness could answer yes or no. The question did not suggest the answer. Therefore, there was no abuse of discretion in overruling the objection. Handley also argues, without any citation to authority, that defendant Fund's exhibit No. 3 should not have been admitted into evidence because it was hearsay. The note was addressed to "To Whom It May Concern" and advised the reader that Handley "should not work in a dusty atmosphere, particularly asbestos dust." Plaintiff suggests that exhibit No. 3 does not show knowledge on Handley's part even though Conklin explained that his normal practice, *i.e.,* where he determined a patient's work environment ought to be modified, was to give the patient a statement to that effect which the patient could then take to his employer. Obviously, if Handley had been given such a note, the jury could infer that he was aware of his condition. In any event, Conklin had already testified to the diagnosis and later said he told Handley about the diagnosis so the note was merely cumulative anyway. Handley further complains that on cross-examination of the witness by Grefco, Grefco should not have been allowed to ask leading questions because Grefco's interest on this issue was the same as the Fund's and Grefco was able to get into evidence, through leading questions, the fact that in 1967 when Conklin made his diagnosis, he discussed with Handley the fact that he had injured his lungs at UNARCO and should not go back to work. Of course, leading questions are allowed on cross-examination.

In this appeal, plaintiffs, including Handley, oppose Grefco's position with regard to the need to sever all of these cases. Handley cites no authority for the proposition that Grefco should not have been allowed to use leading questions. No abuse of discretion on the part of the trial judge has been demonstrated.

### 3. The Instructions on the Assumption of Risk Defense

■■■ On the assumption of risk defense, the trial court refused plaintiff's instruction No. 54 and gave the Fund's instruction No. 10(a), both premised on IPI Civil 2d No. 400.03.01 (Supp. 1986) (Illinois Pattern Jury Instructions, Civil, No. 400.03.01 (2d ed. Supp. 1986)). In addition, the trial court refused plaintiff's instruction No. 55 and gave the Fund's instruction No. 11(a), both premised on IPI Civil 2d No. 400.03 (Supp. 1986) (Illinois Pattern Jury Instructions, Civil, No. 400.03 (2d ed. Supp. 1986)). The Fund's instruction No. 10(a) stated:

> "With *** respect to the claims of plaintiff, John V. Handley, the defendant, Manville Fund, has further asserted the defense that the plaintiff assumed the risk of injury. To establish that defense, the defendant has the burden of proving each of the following propositions:
>
> First, that the plaintiff, John V. Handley, knew of the condition which plaintiff claims made the asbestos unreasonably dangerous;
>
> Second, that the plaintiff, John V. Handley, understood and appreciated the risk of injury from that condition and continued to use the asbestos;
>
> Third, that the known condition was a proximate cause of plaintiff's injuries.
>
> Plaintiff's assumption of the risk, if any, does not bar his recovery. However, the total amount of damages to which he would otherwise be entitled is reduced in proportion to the amount of his fault in assuming the risk. This is known as comparative fault."

Plaintiff's instruction No. 54 is very similar and added a final paragraph as follows:

> "The condition which the plaintiff claims made the asbestos unreasonably dangerous is as follows:
>
> a) it contained no warning that exposure to asbestos caused asbestosis, mesothelioma, cancer of the lung, or cancer of the GI tract;
>
> b) it contained no instruction whatsoever as to safe methods, if any existed, of handling and processing asbestos;
>
> c) it was sold; stated in other words, asbestos is so dangerous and asbestos plant workers were so ignorant of its hazardous nature that it was improper to sell asbestos."

Plaintiff's tendered instruction unfairly emphasizes the allegedly unreasonably dangerous condition and was properly refused. See *Ramos v. Pankaj* (1990), 203 Ill. App. 3d 504, 509, 561 N.E.2d 744, 746.

Plaintiff's instruction No. 55 stated:

> "If you find that John Handley's injury was proximately caused by an unreasonably dangerous condition of the asbestos and if you also find that the plaintiff assumed the risk of his injury, you must then determine the amount of damages to be awarded by you as follows:
>
> First, determine the total amount of damages to which the plaintiff would be entitled under the court's instructions if plaintiff had not assumed the risk;
>
> Second, determine what portion or percentage is attributable solely to the plaintiff's assumption of risk and the conduct of Grefco, Union Asbestos & Rubber Company and Cape Industries and the unreasonably dangerous condition of the asbestos each proximately contributed to the plaintiff's injury.
>
> Third, reduce the total amount of plaintiff's damages by the proportion or percentage of plaintiff's assumption of the risk.
>
> The resulting amount, after making such reduction, will be the amount of your verdict."

The Fund's instruction No. 11(a) was essentially the same, but for the second proposition therein, which stated:

> "Second, determine what portion or percentage is attributable solely to the plaintiff's conduct in assuming the risk, considering the extent to which plaintiff's assumption of risk and the conduct of Johns-Manville, Grefco and UNARCO and the unreasonably dangerous condition of the asbestos each proximately contributed to the plaintiff's damage."

Plaintiff argues it is error for the Fund's instruction No. 11(a) to refer to the statute of limitations defense. The instruction directed the jury to determine damages in this fashion only after finding (1) Handley's injury was proximately caused by exposure to defendant's asbestos, (2) that the cause of action was filed within the statute of limitations period, and (3) that Handley assumed the risk of injury. No authority is cited, and it is only common sense to instruct the jury to consider the statute of limitations defense first. Since the jury obviously did not rule that Handley's claim was barred by the statute of limitations, there does not appear to have been any harm to Handley even if it was error to include such a reference in the instruction.

■■■ The second error Handley alleges is that the absent tortfeasor, Cape Industries (which was not involved in the trial), should

have been referred to in the instruction, as was UNARCO. At the instructions conference, the Fund pointed out that plaintiffs had wanted to keep out the names of other potential tortfeasors throughout trial and it would serve no purpose to include a reference to Cape Industries in the instruction. The trial judge agreed, stating his belief that the jury understood the responsible parties to be Grefco, UNARCO and the Fund.

Jury instructions should not confuse the jury. (See *Chakos v. Illinois State Toll Highway Authority* (1988), 169 Ill. App. 3d 1018, 1027, 524 N.E.2d 615, 622 (noting the jury instructions should fairly and accurately state the law while being concise, impartial, free from argument, and not misleading).) Here, the jury might well have begun to wonder who Cape Industries was and how it was involved if a reference had been made. Since very little reference, if any, had been made to Cape Industries at trial, at plaintiffs' insistence, there was no abuse of discretion for the trial judge to refuse to include a reference to Cape Industries in the instructions.

### H. *Propriety of Rulings Restricting Plaintiffs' Examination of Witnesses Smith and Davison*

Plaintiffs next contend, also in No. 4—91—0090, that the trial court erred by restricting the plaintiffs' examination of Gregg Smith, a Fund employee, and Dr. Thomas Davison, formerly a chief medical officer of the Johns-Manville Waukegan plant and corporate medical director of the Johns-Manville Corporation. The first witness called by plaintiffs was Smith. Smith testified that he had worked for the Fund for over two years. Prior to that employment, Smith worked for the Asbestos Claims Facility in Princeton, New Jersey. Smith had responsibility for the western region of the United States as defined by the Fund, which included Illinois.

Smith testified that the purpose of the Fund was to make payments to individuals exposed to Johns-Manville's asbestos who had injuries resulting therefrom. During plaintiffs' examination of Smith, plaintiffs' attorney asked the following questions of Smith:

(1) "Well, as the Trust goes about its business, what does it use as a guideline as to how much asbestos it takes to cause asbestosis?"

(2) "Is the man's disease the result of the total and cumulative effects of all the asbestos he has breathed?"

(3) "Isn't it true, Mr. Smith, that in any exposure, if Manville asbestos was part of that exposure, because there is no known

safe level, Manville's asbestos is implicated as one of the causes of the disease that the worker suffered from or died from?"

To each of the preceding questions, the court sustained an objection by the Fund. On question (1), the basis for the objection was that the question had been asked and answered. To the remaining questions, the objection concerned the witness' lack of competence to testify to those matters.

■■■ The Fund argues plaintiffs failed to include these questions in the offer of proof. The record clearly establishes these questions were not asked as part of the offer of proof. Where a party seeks to have a reviewing court determine whether the trial court's rulings unduly restricted the examination of a witness, it must be clear from the record what the witness' answer to the question would have been and what purpose would have been served by the testimony. This is accomplished by an offer of proof, and the failure to make an offer of proof waives the issue for review. (*Moore v. Swoboda* (1991), 213 Ill. App. 3d 217, 237-38, 571 N.E.2d 1056, 1070.) Therefore, the issue is waived.

In any event, the objections were properly sustained. Prior to the first of the above-quoted questions, Smith testified there had to be clear proof that an individual was exposed to Manville asbestos, but it was difficult to say how much exposure. Some diseases are related to dose and others are not. Some people could be exposed very heavily over a very short period of time, while other people could be exposed just a little bit for many years, and the effect may well be the same. Since Smith already testified to the guidelines the Fund used to assess claims, it was proper for the trial court to sustain the objection so as to forbid repetitive questioning. (See *Norman v. American National Fire Insurance Co.* (1990), 198 Ill. App. 3d 269, 300, 555 N.E.2d 1087, 1107.) In addition, the second and third questions would require the witness to have a level of expertise which plaintiffs' examination of Smith did not establish he possessed. The trial court's rulings were correct.

■■■ Plaintiffs also claim the trial court erred in restricting plaintiffs' examination of Davison, a former Johns-Manville employee. Davison began his employment with Johns-Manville in 1962 as the chief medical officer of the Waukegan plant. In 1970, Davison became the corporate medical director of the Johns-Manville Corporation. While assigned to Waukegan, he had a clinic in the plant. During the time he was there, asbestos and diatomaceous earth were used in the Waukegan plant.

Plaintiffs complain their counsel was not allowed to ask Davison whether it was true that Johns-Manville operated its plants on the assumption that dust released in any part of the building was likely to become part of the atmosphere in the rest of the building when there were no partitions or walls and nothing to inhibit the movement of the particles. The colloquy is as follows:

"Q. [Plaintiff's attorney on direct examination:] Isn't it true, Dr. Davison, that in its own operations, Manville operated under the assumption that dust released in any part of a building was likely to become a part of the atmosphere in the entire rest of that building when there is [*sic*] no partitions, no walls, no nothing [to] inhibit the movement of those particles?

[FUND'S ATTORNEY]: Objection, your Honor.

THE COURT: Overruled.

[FUND'S ATTORNEY]: Leading, your Honor.

BY THE WITNESS:

A. I don't technically know—

THE COURT: Sustained.

BY THE WITNESS:

A. —that that is true, but I would assume that from industrial hygiene surveys that were done that this would be their feelings.

[FUND'S ATTORNEY]: Excuse me, Doctor.

THE WITNESS: Yes, sir.

[FUND'S ATTORNEY]: I believe the objection is sustained.

THE COURT: I am going to sustain the objection.

THE WITNESS: Excuse me.

THE COURT: The answer is ordered stricken. The jury is ordered to disregard it."

The question was leading, and the objection was properly sustained. In addition, the witness answered before he realized the objection had been ruled upon. What Davison "assumes" is neither his personal knowledge nor his expert opinion. On these bases, sustaining the Fund's objection, striking the testimony, and directing the jury to disregard it would not be error.

Plaintiffs also argue they should have been allowed to ask Davison, "If you breath[e] in both asbestos and diatomaceous earth, can they both contribute to the disease?" To this question, the Fund and Grefco objected on the ground that Davison was not disclosed as an expert, and the objections were sustained. Earlier in his testimony, Davison had been asked to describe "pneumoconiosis," which he indicated resulted from exposure to diatomaceous earth or silica. Grefco

objected to his description of the disease on the grounds that Davison had not been disclosed as an expert by plaintiff and that objection had been sustained.

In *Coleman v. Central Illinois Public Service Co.* (1990), 207 Ill. App. 3d 96, 101-03, 565 N.E.2d 274, 277-79, this court suggested in *dictum* that an employee of an opponent need not be disclosed as an expert pursuant to Illinois Supreme Court Rule 220 where the employer-opponent already knows the employee's opinion. One factor in *Coleman* which is not present in this case is that the employer was planning on calling the employee as a witness anyway. However, even if the trial court in this case erred as to the Fund's objection, the trial court's ruling was clearly proper as to Grefco.

Davison was not Grefco's employee. Therefore, if plaintiffs wanted to inquire of Davison's opinion regarding diatomaceous earth exposure, plaintiffs should have disclosed him as an expert pursuant to Rule 220. Since both questions related to exposure to diatomaceous earth, the objections were properly sustained.

## I. *Propriety of Rulings on Claimed Violations of Supreme Court Rule 220*

We conclude our discussion of plaintiffs' issues by considering two issues relating to Illinois Supreme Court Rule 220. These issues are whether the trial court erred (1) by allowing Grefco to call as an expert witness a person disclosed as an expert in a letter dated September 7, 1989, even though the extended order of disclosure of expert witnesses expired on that date; and (2) in refusing to strike the testimony of Jerome Wiot, or to declare a mistrial, based on a violation of Rule 220.

Supreme Court Rule 220 states, in pertinent part:

"(b) Disclosure.

(1) *Expert witness.* Where the testimony of experts is reasonably contemplated, the parties will act in good faith to seasonably:

(i) ascertain the identity of such witnesses, and

(ii) obtain from them the opinions upon which they may be requested to testify.

In order to insure fair and equitable preparation for trial by all parties the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party either within 90 days after the substance of the expert's opinion first becomes known to that party or his counsel or, if the substance of the expert's opinion is then known, at the first

pretrial conference in the case, whichever is later. In any event, as to all expert witnesses not previously disclosed, the trial court, on its own motion, or on the motion of any party after the first pretrial conference, shall enter an order scheduling the dates upon which all expert witnesses, including rebuttal experts, shall be disclosed. The schedule established by the trial court will sequence the disclosure of expert witnesses in accordance with the complexities of the issues involved and the burdens of proof of the respective parties as to those issues. All dates set by the trial court shall be chosen to insure that discovery regarding such expert witnesses will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence. Upon disclosure, the expert's opinion may be the subject of discovery as provided in paragraph (c) hereof. Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness.

\* \* \*

(c) Discovery.

(1) Upon interrogatory propounded for that purpose, the party retaining or employing an expert witness shall be required to state:

(i) the subject matter on which the expert is expected to testify;

(ii) his conclusions and opinions and the bases therefor; and

(iii) his qualifications.

\* \* \*

(3) A party shall be required to seasonably supplement his answers to interrogatories propounded under this rule as additional information becomes known to the party or his counsel.

\* \* \*

(d) Scope of Testimony. To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to produce, his direct testimony at trial may not be inconsistent with [n]or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings. However, he shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." (134 Ill. 2d Rules 220(b), (c), (d).)

Recently, in *Baird v. Adeli* (1991), 214 Ill. App. 3d 47, 60-61, 573 N.E.2d 279, 286-87, this court discussed the various purposes of these subsections of Rule 220. After observing that, generally, the rule promotes the timely and good-faith pretrial disclosure of expert witnesses to prevent surprise and to facilitate pretrial investigation of credentials of the expert and preparation of cross-examination as well as the substance of the testimony of the opposing party's own expert, this court further noted that each subsection of the rule has a different function. Rule 220(b) allows a trial court to establish a disclosure schedule so as to disqualify an expert who is not properly disclosed, and Rules 220(c) and (d) require timely notification of shifts in an expert's theory or belief and the limiting of the expert's testimony accordingly. Finally, we stated that when the trial court has imposed sanctions for noncompliance with Rule 220, the trial court's ruling will not be upset in the absence of a showing that the ruling resulted from an abuse of discretion. With these principles in mind, the specific instances of alleged violations of Rule 220 need to be examined.

### 1. Walter Klemperer

In cause No. 86—L—112, a schedule was established by the trial court for the disclosure of expert witnesses. Initially, the court ordered Grefco to disclose experts on or before August 1, 1989. Subsequently, the disclosure date was extended to September 7, 1989. On September 7, 1989, Grefco filed a document disclosing two expert witnesses, neither of which was Walter Klemperer. However, on that same date, Grefco's New York counsel sent a letter, by overnight mail delivery, to plaintiffs' attorney indicating a number of additional expert witnesses, including Klemperer. Plaintiffs' response indicated the September 7 letter from Grefco's New York counsel was untimely, unclear as to in which case the disclosure applied, and inconsistent with the formal disclosure which had been filed. Grefco then filed a "Motion for Leave to File Witness Identification," but no hearing was ever conducted on the motion. Attached to the motion was the affidavit of John D. Chapman, a New York attorney representing Grefco, who stated he telephoned plaintiffs' counsel on the morning of September 7, 1989, to inform him of the designation of experts, their identities, and the subjects of their testimony. He offered to send a letter by facsimile transmission, but was informed plaintiffs' attorney did not have a fax machine. He then informed plaintiffs' counsel that he would send a letter by Federal Express so plaintiffs' counsel would receive it no later than September 8, 1989. When Grefco's lead trial lawyer in this case called the plaintiffs' counsel on the afternoon of

September 8, 1989, to inquire as to whether the expert witness disclosure was received, plaintiffs' counsel indicated he considered the disclosure a nullity and would move to preclude the testimony of the witnesses because he did not have the letter in his hand on September 7. In the letter of September 11, 1989, plaintiffs' attorney denies Chapman's version of the telephone conversation, indicating he firmly stated he would not agree to an extension of the deadline for disclosing witnesses and that Chapman did not specifically mention Klemperer or on what subject he would testify.

When Grefco sought to call Klemperer as a witness, plaintiffs objected on the grounds that (1) disclosure had been incomplete and untimely; and (2) Grefco failed to furnish plaintiffs with a written report or answer to plaintiffs' outstanding Rule 220 interrogatories as to Klemperer. In March 1989, Grefco answered Rule 220 interrogatories in case Nos. 84—L—129 and 86—L—112 by stating "Investigation continues." After disclosing the two other expert witnesses, Grefco filed supplemental opinions and conclusions limited to those two experts. Nevertheless, the trial court allowed Klemperer, a chemist, to testify as a retained expert. In so ruling, the trial judge refused to exalt form over substance by barring the testimony of a witness disclosed "six hours late." Plaintiffs were permitted to interview Dr. Klemperer prior to the time he testified. The trial court further noted this disclosure had been of record in excess of six months and Klemperer's testifying certainly came as no surprise.

■■■ No abuse of discretion occurred in allowing Klemperer to testify. The rule does not specify the manner of disclosure. Even if the trial court was not convinced disclosure was made in the telephone conversation and even though the letter disclosure was one day late, plaintiffs had from September 8, 1989, to May 14, 1989, to depose Klemperer. They did not file any additional discovery requests specifically aimed at Klemperer, apparently intending to stand on the "surprised by non-disclosure" argument at trial. The fact that Grefco filed a motion to identify expert witnesses, but did not notice the motion for hearing, is no help to plaintiffs. Plaintiffs could have noticed the motion for hearing.

### 2. Dr. Jerome Wiot

■■■ One of the two witnesses which Grefco formally disclosed on September 7, 1989, was Dr. Jerome Wiot. The evidentiary dispute in this matter relates only to a challenge by plaintiffs to Wiot's credibility and level of expertise. Wiot testified that a person who read thousands of X rays would be entitled to more credibility than one who

never read any at all. Plaintiffs attempted to show Wiot had great experience in reading X rays of workers exposed to asbestos and silicas, but had limited experience with X rays of workers exposed to diatomaceous earth. Wiot agreed that the literature indicates the scars caused by diatomaceous earth are irregular in comparison to the more common quartz silicosis. However, he qualified his statement by saying there has been so little work on diatomaceous earth that he could not draw that conclusion. Although he had taught for years at the University of Cincinnati, the articles he had written had not discussed diatomaceous earth. Then plaintiffs' attorney inquired if it were correct that, although he had seen thousands of X rays, other than the X rays of Bloomington plaintiffs, he had never seen any X ray where the issue was whether someone had a disease from exposure to diatomaceous earth. Wiot answered that he had and that Grefco's attorney had reminded him of this fact that morning or the day before. Wiot explained he thought he was reviewing X-ray photographs of silica-exposed miners merely for the purpose of determining the presence of an occupational lung disease. Wiot admitted he had reviewed these X rays before his March 1990 deposition and that he met with Grefco's attorney before the deposition. At the deposition, Wiot had described his experience under questioning. However, Grefco's counsel had not reminded him before the deposition or said anything during the deposition about those other X rays. When plaintiffs' attorney asked Wiot whether he would agree that, before Grefco's attorney reminded him of the prior X rays, the weight the jury should give to his testimony concerning the presence of diatomaceous earth disease would have been very negligible since he had never seen the X rays of workers exposed to diatomaceous earth, Wiot responded by explaining that he did not have to have seen X rays of those exposed to diatomaceous earth. Diatomaceous earth is a silica, and the lung responds to silica in a certain fashion, whether it is diatomaceous earth, silica flour, or whatever it is. Plaintiffs moved to strike Wiot's testimony, or in the alternative, for mistrial. After acknowledging that Wiot had been asked about examining other people exposed to diatomaceous earth at his deposition and answered he had not and that this is a serious problem, the trial judge nevertheless denied plaintiffs' requested relief because he did not believe the relief sought was warranted. Plaintiffs also contend the trial court erred in denying plaintiffs' motion made pursuant to Rule 237 (134 Ill. 2d R. 237) to view all documents relating to Wiot's examination or findings with regard to the earlier X rays, whether generated by defense or by Wiot. Approximately 1,390 X rays had been sent to Wiot by Grefco's counsel

in September 1989. Grefco objected to the motion, and the trial court agreed to review these documents *in camera*. After making the *in camera* inspection, the trial court found that the documents were not relevant and refused plaintiffs' request to see the documents. Rule 237 allows a party to subpoena a witness to appear at trial and to require that person to produce documents or other tangible evidence. In this case, the documents were produced. The trial court viewed them *in camera* and found them to be irrelevant to the case at bar. Plaintiffs' brief makes no showing that the trial court's ruling as to relevance is incorrect. The trial judge stated:

> "I have no idea what these things mean, and it does appear to me that they are not relevant to the issues in this case, and I am, therefore, going to keep the memorandum and return the matters which I have inspected *in camera* to the Defendant Grefco."

After plaintiffs noted that the appellate court would not be able to review this material if it were returned to Grefco, the trial judge decided to place the documents in a sealed envelope. We have reviewed these documents, and we agree with the trial court's assessment. "Evidence is relevant if it tends to make more or less probable the existence of any fact which is of consequence to the determination of the action." (*Baird*, 214 Ill. App. 3d at 68, 573 N.E.2d at 292.) Involved in this case are the notes of Wiot about his findings on review of the group of X rays, correspondence from Grefco's attorney to Wiot, and an affidavit of one of Grefco's attorneys that these 1,390 X rays were submitted to Wiot for review. As already noted, these X rays do not relate to any of the plaintiffs in this case. Wiot also testified that it did not matter if he had seen X rays of persons exposed to diatomaceous earth because diatomaceous earth is a silica and the lung responds to silica in a certain way. Plaintiffs intended to challenge Wiot's credibility based on the fact Wiot had never viewed X rays of persons exposed to diatomaceous earth. Wiot had already testified at trial about his viewing these X rays, and the material does not contradict his testimony. Any cross-examination of Wiot by plaintiffs concerning his findings with regard to these X rays would have amounted to an exploration into uncharted waters on a tangential matter. On this record, no abuse of discretion has been established with regard to denying plaintiffs' motion made pursuant to Rule 237.

As to the ruling to allow Wiot's testimony into evidence, since the plaintiffs moved to strike all of Wiot's testimony, no abuse of discretion occurred. Had the motion addressed only that portion relating to having viewed previously undisclosed X rays earlier, per-

haps an abuse of discretion would have occurred. As for plaintiffs' request for a mistrial, again, no abuse of discretion occurred in denying it. The relief sought by plaintiffs was clearly overbroad.

### III. MERITORIOUS ISSUES RAISED BY DEFENDANTS

We have now concluded our examination of all issues raised by plaintiffs. No reversible error has been found. We next proceed to consider the issues raised by the Fund in No. 4—91—0046, and the additional issues raised by Grefco in No. 4—91—0066. Our analysis indicates that some of these issues require reversal, and our discussion will, for the most part, be limited to those issues. The parties should be aware that all issues raised by Grefco and the Fund have been reviewed, and those not discussed herein are deemed to be without merit.

### A. *The Improper Behavior of Plaintiffs' Counsel, Attorney James Walker*

■■■ One of the most significant reasons for reversing the judgments against the Fund in this case is the behavior of plaintiffs' counsel. This behavior is not only not condoned, it is condemned. We conclude the Fund was denied a fair trial by tactics employed by plaintiffs' counsel calculated to prejudice the jury against the Fund. In spite of *in limine* rulings precluding inquiry into the parties' settlement negotiations, or claims, lawsuits, settlements or judgments of other plaintiffs, plaintiffs' attorney improperly questioned Gregg Smith and persisted in this line of questioning in spite of numerous objections being sustained. In addition, the plaintiffs' attorney's closing argument was improper because therein he discussed his personal experience representing workers in asbestos litigation, including reference to William Cochran, who had died of cancer, and plaintiffs' attorney's frustration at not being able to resolve Cochran's claim against the Fund. Only when plaintiffs' attorney blamed the Manville bankruptcy reorganization did the trial court uphold the Fund's objection to the attorney's "testifying" during closing argument.

Plaintiffs' counsel was also involved in *Central Information Financial Services, Ltd. v. First National Bank* (1984), 128 Ill. App. 3d 1052, 471 N.E.2d 992, wherein this court reversed the judgment and remanded the cause for a new trial on the basis of this same attorney's prejudicial argument. Among the improprieties noted therein was the attorney's reference to personal knowledge of facts not before the jury. In that case, this court held that the sustaining

of the objection was insufficient to negate the prejudicial impact of the argument which seriously jeopardized the opposing party's opportunity to receive a fair consideration by the jury of a complicated factual situation. The result here is the same. We note also that the trial in this case was conducted during May and June 1990 by which time plaintiffs' counsel was well aware of this court's 1984 decision in *Central Information.*

### B. *Additional Errors Requiring Reversal of Judgments Against the Fund*

The additional reasons for reversing the judgments against the Fund are that the trial court (1) permitted the expert testimony of Dr. Susan Daum into evidence in violation of Supreme Court Rule 220; (2) allowed the jury to consider evidence that plaintiffs were at an increased risk of cancer over an objection that such evidence was speculative; and (3) admitted evidence of conditions at the Johns-Manville plant in Waukegan through the testimony of three former Johns-Manville employees over objections to the relevance of such evidence.

### 1. Propriety of Permitting Dr. Daum to Give Expert Testimony: the Operation of Supreme Court Rule 220

Daum was a medical expert in the case No. 80—L—93 involving injury to George Redman, but was not disclosed as an expert witness until April 23, 1990, three weeks before trial. In addition, plaintiffs Betty J. Redman, as administrator of the estate of George Redman, deceased, and individually, did not disclose the opinion of Daum pursuant to Rule 220(b)(1). Plaintiffs' disclosure references a report from Daum prepared February 15, 1978. In addition, the Fund propounded Rule 220 interrogatories to plaintiffs on October 17, 1989. Plaintiffs did not respond, and the Fund moved to compel response. On January 9, 1990, plaintiffs were ordered to answer the interrogatories and produce documents. Responses were filed on February 20, 1990. Daum was not listed there as an expert; and although plaintiffs indicated they might call some of the plaintiffs' treating physicians, Daum had not treated Redman. The Fund also complains that once plaintiffs disclosed Daum as an expert, the Fund's attempts at discovering her opinion were frustrated by plaintiffs' counsel during the deposition.

Plaintiffs contend Daum was disclosed in an answer to an interrogatory filed December 8, 1980. The specific interrogatory and answer thereto was as follows:

> "INTERROGATORY NO. 77
>
> In your Complaint, you have alleged that decedent died as a result of exposure to asbestos sold by Johns-Manville. Please state the name and current address of each individual known to you who has personal knowledge of facts upon which those allegations are based, other than persons previously listed in your Answers to these Interrogatories and decedent's attending medical personnel.
>
> ANSWER TO NO. 77: Dr. Susan Daum, Mt. Sinai Medical Center."

A copy of Daum's report was provided to the Fund under cover letter dated July 29, 1988, submitting a claim and on which there is stamped a date of August 2, 1988, which apparently indicates a date of receipt by the Fund. Another copy was provided to the Fund under cover of letter dated February 12, 1990. Dr. Alexander Hantel, the Fund's expert on colon cancer, was provided a copy of Daum's report on February 19, 1990, one month before Hantel's deposition on March 21, 1990, and three weeks before trial. Based on this, plaintiffs argue no violation occurred.

As *Barth v. Reagan* (1990), 139 Ill. 2d 399, 417, 564 N.E.2d 1196, 1204, points out, discovery of expert witnesses is to be completed not later than 60 days before trial is anticipated to commence (134 Ill. 2d R. 220(b)(1)), *and* a party is to disclose the expert within 90 days of learning of the expert's opinion or at the first pretrial conference, *whichever is later*. There, the supreme court affirmed a ruling barring certain testimony because the party had failed to disclose the expert witness within 90 days of learning of the expert's opinion, thereby violating Rule 220; the *Barth* court therefore found it unnecessary to address whether there was a violation of Rule 220's 60-day requirement. (*Barth*, 139 Ill. 2d at 419, 564 N.E.2d at 1205.) It is clear, in this case, Daum was not disclosed as an *expert witness* whom plaintiffs anticipated calling until only *three weeks* remained until trial was to begin. In *Wehmeier v. UNR Industries, Inc.* (1991), 213 Ill. App. 3d 6, 572 N.E.2d 320, the decision in *Barth* was applied to decide two expert witnesses for the Fund should have been disqualified. One witness was not disclosed until two days before trial. While the other witness was disclosed before trial, his opinion was formed only three days before trial was to begin and the Fund did not disclose his opinion until 10

days later, well after trial had commenced. Daum, too, should have been precluded from testifying.

### 2. Proving Reasonably Expected Costs of Future Medical Monitoring: No Need to Reference Plaintiffs' Increased Risk of Cancer

The Fund next contends it was error for the trial court to allow plaintiffs Day, Handley, and Hayes to present evidence of their increased risk of cancer because no doctor testified these plaintiffs suffering from asbestosis would more likely than not contract cancer because of their exposure. The Fund claims this was error even though there was an instruction limiting the jury's consideration of the evidence to determining damage for future medical monitoring costs. The Fund made a motion *in limine* to exclude evidence of an increased risk of cancer for any purpose and specifically objected to the introduction of such evidence as a basis for a damage claim of future medical monitoring. Nevertheless, the evidence was allowed in. The instruction given to the jury was a non-IPI instruction tendered by the Fund and read as follows:

"With respect to the claims of Robert Day, Raymond Deitz, Lee Hayes and John V. Handley, you have heard evidence that these individuals may have an increased risk of cancer because of exposure to asbestos. This evidence was received for the limited purpose of establishing that these plaintiffs may incur future medical costs to monitor their health. Increased risk of cancer is not an 'injury' for purposes of deciding if the defendant is liable to the plaintiff and is not a separate, compensable item of damage. You may consider this evidence only if you have found that the defendant is liable to a particular plaintiff, and then only for the limited purpose for which it was offered."

In *Wehmeier* (213 Ill. App. 3d at 33-34, 572 N.E.2d at 338-39), this court determined it was error to introduce evidence of plaintiff's increased risk of contracting cancer due to exposure to asbestos because it was speculative and did not constitute a present, compensable injury. Of course, here, the evidence was not admitted to allow for recovery for a possible contracting of cancer sometime in the future. Instead, the evidence was introduced to demonstrate the need for future medical monitoring of these plaintiffs and to recover the projected expenses therefor.

The measure of damages includes the reasonable expense of medical care, treatment, and services reasonably certain to be received in the future. (See IPI Civil 3d No. 30.06.) Here, the incurring of medi-

cal expenses for future monitoring of plaintiffs' conditions is reasonably certain to occur, although the contracting of cancer is not.

The Fund suggests the proper remedy is to wait until plaintiffs contract cancer and allow them to then sue for that injury. The Fund's suggested remedy would leave all exposed plaintiffs who never contract cancer to pay for medical monitoring themselves. Therefore, we reject this suggestion.

 However, the reference to the possibility of cancer in the future is highly inflammatory. It is also unnecessary. The costs of future monitoring of plaintiffs' conditions could easily be discussed without ever referring to "cancer." Plaintiffs' medical witnesses could be instructed by the plaintiffs' attorney not to refer to the risk of cancer, but to refer only to the need for future monitoring of plaintiffs' conditions. (If, of course, a defendant challenges the need for future medical monitoring, as opposed to its reasonably expected cost, then defendant deserves having the jury to hear the word "cancer," and invites it.) Once the jury is informed of the risk of cancer without any evidence that it is more likely than not to occur, the prejudice results in spite of the limiting instruction. This is just a thinly veiled way of getting evidence of future risk of cancer before the jury in the hope of receiving an enhanced judgment.

### 3. Evidence of Conditions at Another
### Johns-Manville Plant

With regard to the remaining basis for reversing the judgments against the Fund, we note the Fund objected to the testimony of Joseph Sliteris, Dr. Eugene Pitts II, and Dr. Thomas Davison and the exhibits admitted through their testimony. These three plaintiffs' witnesses were present or former Johns-Manville employees at the Waukegan, Illinois, plant. The Fund has nothing to complain about with regard to Pitts, since at the portion of the record where the Fund suggests error occurred, the Fund's objections were sustained. (*Wright v. Yellow Cab Co.* (1983), 116 Ill. App. 3d 242, 258, 451 N.E.2d 1313, 1323.) Therefore, we will consider this issue only as it relates to the testimony of Sliteris and Davison.

Sliteris is a present employee and has worked for the Johns-Manville Corporation or its predecessors for 32 years. He has worked at the Waukegan plant for 18 years. He testified, over an objection as to the relevance since he did not work at UNARCO, that he observed dust in the air at the Waukegan plant. He is an industrial engineer and he served in the capacity of safety coordinator for about six months. Plaintiffs' group exhibit No. 3 was identified by Sliteris to be

a group of reports prepared by him and other persons serving in the capacity of safety coordinator. These reports concerned claims of occupational diseases and injuries to workers at the Waukegan plant. When plaintiffs moved to admit group exhibit No. 3 into evidence, both defendants objected. The Fund argued it was hearsay and irrelevant. Grefco joined that objection and argued further that there was no foundation as to the type of silicas used in the Waukegan plant. The exhibit was admitted as to the Fund because the reports are admissions; but as to Grefco, admission of the exhibit was denied initially because they could not be considered admissions by Grefco. Subsequently, plaintiffs again tendered the exhibit as a business record, after Sliteris testified it was part of his job to prepare the report, he was trained to fill out the form, and he did so accurately. Over Grefco's objection, the exhibit was admitted.

Davison, chief medical officer at the Johns-Manville plant in Waukegan from 1962 to 1970, and corporate medical director of the Johns-Manville Corporation from 1970 to 1972, was allowed to respond to questions over the Fund's objections as to the relevance because his testimony was about the Waukegan plant and there was no showing of similarity between the two plants. These questions related to (1) whether the witness found that some of these employees had diseases caused by the dusts that they inhaled there, (2) whether he saw cases of people who were working as guards who contracted dust-exposure diseases, and (3) whether Johns-Manville operated on the assumption that people 50 or 100 feet away are at no risk because asbestos dust could not possibly travel such a distance.

In *Wehmeier*, this court found the trial court erred by allowing evidence of plant conditions at the Manville plant and injuries to Manville employees where no evidence was presented as to whether the Waukegan plant was similar to the UNARCO plant in Bloomington and to what type of asbestos and working conditions the Waukegan workers were exposed. Evidence is relevant if it tends to establish a fact in controversy or to render a proposition in issue more or less probable. The trial court's determination of whether evidence is relevant will not be disturbed absent an abuse of discretion. Since the Fund in *Wehmeier* admitted Manville's knowledge of hazards and failure to warn of them, this court considered the evidence of Waukegan plant conditions concerning these issues was therefore not relevant to any issue in controversy. Therefore, it was an abuse of discretion to allow the evidence to be presented to the jury. (*Wehmeier*, 213 Ill. App. 3d at 35, 572 N.E.2d at 340.) As in *Wehmeier*, the Fund in the case at bar admitted knowledge of the hazardous condition of the

product and the failure to warn. Plaintiffs attempt to argue that their evidence was relevant to the issue of causation and foreseeability, as foreseeability relates to the Fund's defense that actions by UNARCO are a superseding cause of plaintiffs' injuries.

Contrary to plaintiffs' argument, it is not necessarily foreseeable to the Fund that UNARCO would allow excessive amounts of asbestos dust to accumulate in the UNARCO plant atmosphere even if Johns-Manville allowed such accumulation in its own plant, particularly where evidence did not show conditions in both plants to have been substantially similar. Nor is it more probable than not that the Fund would have foreseen that UNARCO would fail to provide adequate medical examination of employees simply because it could be argued that Johns-Manville might have failed to provide adequate medical examination. Nor does it necessarily follow that asbestos supplied by Johns-Manville and its related entities caused injuries to workers at UNARCO simply because similar injuries occurred to workers at the Johns-Manville plant in Waukegan. The Fund points out that the evidence does not establish the shape or size of the Waukegan plant, the working conditions, the air circulation, the dust-control equipment or practices, or the nature of the products being handled by the workers there. Equally important, similarities in the duration and extent of exposure have not been established.

For this reason and for the previously discussed reasons, the judgments against the Fund are reversed in No. 4—91—0046.

### C. *Additional Errors Requiring Reversal of Judgments Against Grefco*

Initially, we note that it was error for the trial court to admit plaintiffs' exhibit No. 51, a document purporting to state the ingredients used to make Unarcoboard, but that error was rendered harmless by other testimony indicating diatomaceous earth was an ingredient of Unarcoboard. Other errors, however, were sufficiently serious as to require reversal of the judgments against Grefco. First, Grefco was denied a fair trial by the admission into evidence of plaintiffs' exhibit Nos. 44, 45, and 46 (newspaper and magazine articles), and plaintiffs' group exhibit No. 3 (reports from the Johns-Manville plant in Waukegan regarding occupational diseases at the plant). In addition, the trial court made incorrect rulings with regard to collateral estoppel and further erred by striking Grefco's affirmative defense that some plaintiffs were contributorily negligent because of their cigarette smoking.

### 1. Newspaper and Magazine Articles

Plaintiffs' exhibit Nos. 44, 45, and 46 were newspaper and magazine articles. Exhibit Nos. 44 and 45 were articles from the Lompoc Record, a newspaper in Lompoc, California. The articles discussed diatomaceous earth and pneumoconiosis. Exhibit No. 46 is an article from the January 1952 issue of Search magazine entitled "Death by Dust—Pneumoconiosis from Diatomaceous Earth." Exhibit No. 44 was part III of the Lompoc Record on April 24, 1952, and exhibit No. 45 was the front page section from the issue on the same date. Exhibit No. 44 was a "special supplement" to that issue of the newspaper welcoming GLC to Lompoc on the opening of its diatomaceous earth plant. Exhibit No. 45 contained the headline "Adult Health Head Hits State Accident Commission Setup on Dust Cases." Following the headline were two articles, one by plaintiffs' expert Dr. Herbert Abrams concerning the commission's treatment of diatomaceous earth dust victims and criticism of the head of the State's Bureau of Adult Public Health, and another article in which Dr. Walter Anderson asked for a public meeting with Abrams concerning the incidence of disease. Both the newspaper and the magazine had been maintained in Abrams' files since 1952. Grefco's objections to the evidence were overruled.

In addition to constituting hearsay, which plaintiffs admit, the articles are inflammatory. The magazine article presents a case study of diatomaceous earth's part in the death of an individual, including discussion of the autopsy. In addition, the articles refer to workers exposed to massive amounts of dust in the mining and processing of diatomaceous earth.

Plaintiffs contend the exhibits fall within a hearsay exception since they are evidence of Grefco's notice of the effect of exposure to diatomaceous earth dust. However, there is no evidence anyone at Grefco read these articles such that notice can be established. In addition, Grefco was collaterally estopped from contesting that it knew of the harmful effect of the exposure to diatomaceous earth. If Grefco is collaterally estopped from denying knowledge of the effects of exposure to diatomaceous earth, the presentation of this evidence is unnecessary, and the objection on grounds of hearsay should have been sustained.

### 2. Injury Reports Regarding Employees at Another Johns-Manville Plant

Plaintiffs' exhibit No. 3 was a group exhibit of injury reports re-

garding employees at the Johns-Manville Waukegan plant and was improperly admitted as evidence. The exhibit was introduced during the testimony of Sliteris, a former safety coordinator of the Waukegan plant. He prepared some of the reports. In spite of Grefco's objection on the grounds that no testimony had been given that the plants were comparable or that diatomaceous earth had been used at the Waukegan plant, the exhibit was admitted as a business record. Even though the exhibit may contain business records, that fact alone does not make it admissible in the absence of a showing of relevance. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §403.1 (5th ed. 1990); *Wehmeier*, 213 Ill. App. 3d at 35, 572 N.E.2d at 340.

■■■ Although there was evidence from the plant doctor and from Grefco's cross-examination of Sliteris that diatomaceous earth had been used in the Waukegan plant, and Abrams testified about his observation of the operations and materials used at the Waukegan plant, based on this court's analysis in *Wehmeier*, evidence of injuries occurring at the Waukegan plant cannot be admitted without showing the conditions at the Waukegan plant, the processes used, the ventilation system, and the materials used, *et cetera*, as already discussed. More importantly, however, claims of injuries do not establish that the injuries actually occurred. Certainly, plaintiffs could argue the claims were notice to the Fund that exposure may cause injury, but it cannot be argued that claims made to a Johns-Manville employee are notice to Grefco that exposure to diatomaceous earth can cause injury. As to Grefco, the relevance of plaintiffs' group exhibit No. 3 has not been established, and the admission of the exhibit was error.

### 3. The Doctrine of Collateral Estoppel as it Applies Against Grefco

In addition, the trial court made rulings with regard to the doctrine of collateral estoppel which precluded Grefco from presenting an effective defense. During the pretrial phase of this case, plaintiffs moved for summary judgment based on estopping Grefco from relitigating ultimate issues of fact and law which plaintiffs claimed were determined adversely to Grefco in *Kessinger v. Grefco* (7th Cir. 1989), 875 F.2d 153. Plaintiffs' motion was considered in conjunction with a motion by Grefco for summary judgment for exposure to diatomaceous earth prior to its incorporation. The trial court denied Grefco's motion, granted plaintiffs' motion, and entered summary judgment against Grefco. The court also entered an order in response to plaintiffs' motion *in limine* which reinforced the collateral estoppel ruling. At the conclusion of the trial, the trial court instructed the jurors

they were to apply the following findings of fact and law in deciding issues regarding actions against Grefco:

"a) Fibrosis of the lungs is caused by exposure to diatomaceous earth;

b) Defendant Grefco knew, before distribution of diatomaceous earth to the Perry Street plant, that exposure to diatomaceous earth caused fibrosis;

c) Defendant Grefco distributed diatomaceous earth to the Perry Street plant;

d) Defendant Grefco, Inc., is responsible for the sales of diatomaceous earth which occurred by Great Lakes Carbon Corporation to the Bloomington plant; [and]

e) Defendant Grefco, Inc. was negligent in failing to warn of the hazards of exposure to diatomaceous earth, and in particular, the risk of fibrosis of the lungs by the failure to place warnings on bags of diatomaceous earth supplied to Bloomington from 1953 to 1967."

The elements of collateral estoppel have been set forth above, and we need not repeat them. Grefco argues, however, that the issues raised in the *Kessinger* case differ from those raised in this case. In *Hammond v. North American Asbestos Corp.* (1991), 207 Ill. App. 3d 556, 562, 565 N.E.2d 1343, 1347, this court held that for collateral estoppel to apply, it must conclusively appear that the fact must have been so in issue that it was necessarily decided by the court rendering the prior judgment. If there is any uncertainty because more than one distinct issue of fact is presented to the court, the estoppel will not be applied. In order to ascertain what was adjudicated in a prior proceeding, the court examines the judgment actually entered with respect to the issues presented for review, and not merely the opinion rendered. The court also looks to the proceedings in the earlier case to ascertain what the issues were and how they were resolved. The party invoking the defense of collateral estoppel must show with clarity and certainty the precise issues and judgment in the former action.

Grefco is not disputing the finding that it distributed diatomaceous earth to UNARCO. In addition, this court has also already determined Grefco is collaterally estopped from arguing it was not responsible for sales of diatomaceous earth by GLC in *Hammond*. While arguing this court's determination in *Hammond* is incorrect, Grefco does not cite any new authority, and as a result, this court refuses to retreat from its position in *Hammond*. For this reason, we have also rejected Grefco's argument that the trial court erred by refusing to

grant it summary judgment with regard to diatomaceous earth supplied to UNARCO during the period 1953 to mid-1966.

In support of their motion for estoppel, the plaintiffs filed several volumes of exhibits, including a copy of the first amendment to plaintiff's complaint in *Kessinger*, transcripts from the *Kessinger* trial, the judgment order of Judge Mills (Kessinger v. General Mining Union Corp. (C.D. Ill. Oct. 20, 1987), No. 85—3092 (unpublished order)), the briefs of the parties on its appeal, and the opinion of the Seventh Circuit affirming the judgment (*Kessinger*, 875 F.2d 153). Grefco's primary argument is that the issues were not the same in *Kessinger* as in the case at bar.

In *Kessinger*, the allegations included the following: (1) fibrosis of the lungs is caused by exposure to diatomaceous earth; (2) before defendant Grefco sold diatomaceous earth to UNARCO, it knew that exposure to diatomaceous earth particles caused fibrosis of the lungs; and (3) defendant was negligent in one or both of the following ways: (a) failing to provide a warning that exposure to diatomaceous earth caused fibrosis of the lungs, or (b) failing to provide plaintiff with instruction as to safe methods, if any existed, of handling and processing diatomaceous earth. The issues instruction in the *Kessinger* case advised the jury that Kessinger claimed he sustained injuries as a result of an exposure to diatomaceous earth, and that Grefco, knowing exposure to diatomaceous earth "could" cause injury, was negligent in one or more of the following respects: (1) failing to provide a warning, and (2) failing to provide instructions as to safe methods of handling and processing diatomaceous earth. As has already been noted, judgment was entered for Kessinger against Grefco on these issues, and that judgment was affirmed. *Kessinger v. Grefco, Inc.* (7th Cir. 1989), 875 F.2d 153.

In plaintiffs' complaint in the case at bar it is alleged, just as in *Kessinger*, that fibrosis of the lungs is caused by exposure to diatomaceous earth, that Grefco knew exposure to diatomaceous earth caused fibrosis of the lungs, and that Grefco was negligent for failure to warn and to instruct as to handling. The issues are similar. However, the *Kessinger* case decided exposure to diatomaceous earth *could* cause fibrosis and did cause fibrosis in Kessinger. *Kessinger* did not decide diatomaceous earth causes fibrosis in every instance even though exposure might have been slight. For the same reason, if estoppel applies, Grefco would be estopped from denying it knew exposure *could* cause fibrosis before it distributed diatomaceous earth.

On the last of the collaterally estopped facts, the jury in this case was directed to find Grefco was negligent in failing to warn of

the hazards from 1953 to 1967. One problem is that *Kessinger* involved two theories of negligent liability: failure to warn and failure to instruct as to handling. Therefore, even if the *Kessinger* jury found Grefco was negligent, the finding could have been based on a failure to instruct and not a failure to warn. The finding of a specific, material, and controlling fact in a former case must conclusively appear to have been determined by the court rendering judgment. If there is an uncertainty, estoppel will not be applied. (*Lange v. Coca-Cola Bottling Co. of Chicago, Inc.* (1969), 44 Ill. 2d 73, 75, 254 N.E.2d 467, 468; *Case Prestressing Corp. v. Chicago College of Osteopathic Medicine* (1983), 118 Ill. App. 3d 782, 785, 455 N.E.2d 811, 815.) The Seventh Circuit's opinion deals with whether there was sufficient evidence to establish that Grefco had a duty to warn and that court found there was sufficient evidence. (*Kessinger*, 875 F.2d at 156.) However, merely because there was sufficient evidence does not mean that is what the jury, in fact, found. Furthermore, in both cases, the duty to warn seems to be restricted to placing labels on the bags. Even if Grefco had placed labels on the bags, how would someone who did not handle the bags, but came into contact with the dust in the air, be alerted to the danger by a label on the bag? Another problem is that the jury in *Kessinger* did not precisely decide when Grefco became aware of the hazardous condition of diatomaceous earth such that a duty to warn arose. Kessinger was exposed over a considerable period of time. While there is some overlap in the period of Kessinger's exposure and the period of exposure of some of the plaintiffs, the *Kessinger* judgment does not definitively establish for all of these plaintiffs that Grefco's knowledge of the hazardous condition and the duty to warn predates the exposure of all of these plaintiffs to diatomaceous earth dust. In summary, Grefco is collaterally estopped, based on the *Kessinger* case, from contesting the following facts: (1) fibrosis of the lungs could be caused by exposure to diatomaceous earth; (2) Grefco distributed diatomaceous earth to the Perry Street plant; and (3) Grefco is responsible for the sales of diatomaceous earth by GLC to the Bloomington plant.

As to this issue, plaintiffs argue that because of the general verdict in this case, the jury could have found Grefco to be strictly liable or negligent, and since Grefco's contentions on this issue relate only to the theory of negligence, the judgments must be affirmed. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1201(d); *Stark v. D & F Paving Co.* (1977), 55 Ill. App. 3d 921, 928, 371 N.E.2d 315, 320.) We do not agree that this issue applies only to the negligence theory.

### 4. Error in Striking Grefco's Affirmative Defense as to the Contributory Negligence of Plaintiffs who Smoked Cigarettes

■ Grefco was also allowed to present evidence of cigarette smoking as evidence of negligence on the part of some plaintiffs. At the close of the evidence, the trial court struck this affirmative defense. In *Wehmeier*, this court specifically held that such evidence is relevant to issues of causation and damages and should be admitted on these issues without restriction. Although not all the plaintiffs are or were cigarette smokers, this is an additional reason to reverse some of the judgments against Grefco.

### IV. Affirmative Defense Of Superseding Cause In The Actions Of Unarco

■ Finally, both the Fund and Grefco attempted to raise as an affirmative defense the actions of UNARCO as a superseding cause of plaintiffs' injuries. Under *Wehmeier*, evidence of UNARCO'S actions may be presented by defendants in an attempt to convince the jury that UNARCO'S actions were a superseding cause of plaintiffs' injuries. Although we are not reversing the striking of these affirmative defenses, this should not be construed as an indication of this court's unwillingness to follow *Wehmeier*. *In this case, the pleading of the affirmative defense was deficient.* Neither party pleaded that UNARCO'S actions were unforeseeable and the Fund commingled allegations of superseding cause with allegations of UNARCO as a sophisticated purchaser. In *Hammond v. North American Asbestos Corp.* (1982), 105 Ill. App. 3d 1033, 1040, 435 N.E.2d 540, 546, *aff'd* (1983), 97 Ill. 2d 195, 208, 454 N.E.2d 210, 217, this court rejected the sophisticated purchaser affirmative defense. Affirmative defenses must be pleaded with the same factual specificity as other pleadings and are subject to the same attacks as other pleadings for factual deficiencies. Ill. Rev. Stat. 1989, ch. 110, par. 2—613; see also *Kenworthy v. Young* (1979), 70 Ill. App. 3d 144, 388 N.E.2d 217 (for the general rules pertaining to the determination of whether a pleading is sufficient).

### V. Summation

For the foregoing reasons, we (1) in No. 4—91—0046, reverse the judgments of the circuit court of McLean County entered against the Fund and in favor of John Handley; Robert Day; Lee Hayes; Ethel Babb, administrator of the estate of Joseph Babb, deceased, and indi-

vidually; Betty Redman, administrator of the estate of George Redman, deceased, and individually; Gladys Nevius, administrator of the estate of Ernest Nevius, deceased and individually; Dorothy Betts, administrator of the estate of Elijah Betts, deceased, and individually; Chlora Skinner, administrator of the estate of Robert Skinner, deceased, and individually; and Delora Stewart; and we remand these causes for a new trial; (2) in No. 4—91—0066, we reverse the judgments of the circuit court of McLean County entered against Grefco and in favor of Robert Day; John Handley; Lee Hayes; Wilha Dietrich; Dewey Durbin; Joseph Finfrock; Jerry Heck; Margaret Harmon, administrator of the estate of Thomas Harmon, deceased, and individually; Delora Stewart; and Robert Van Dorn; and we remand these causes for a new trial; and (3) in all other respects, we affirm the orders and judgments of the circuit court of McLean County in these consolidated cases.

No. 4—91—0046, Affirmed in part, reversed in part, and causes remanded.

No. 4—91—0057, Affirmed.

No. 4—91—0066, Affirmed in part, reversed in part and causes remanded.

No. 4—91—0090, Affirmed.

STEIGMANN and LUND, JJ., concur.