Jearl KESSINGER, Plaintiff–Appellee,

v.

GREFCO, INC., Defendant–Appellant.

GREFCO, INC., Third–Party
Plaintiff–Appellant,

v.

GREAT LAKES CARBON CORPORA-
TION, Third–Party
Defendant–Appellee.

No. 88–3025.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1989.

Decided May 25, 1989.

Rehearing Denied July 19, 1989.

Jordan A. Fifield, Goldsworthy Fifield & Hasselberg, Peoria, Ill., for defendant-appellant.

James R. Wylder, Bloomington, Ill., Harry G. Sachrison, Jr., Sweeney & Riman, Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and WILL, Senior District Judge.[1]

BAUER, Chief Judge.

Plaintiff-appellee Jearl Kessinger used to work for Union Asbestos & Rubber Company (Union Asbestos) in Bloomington, Illinois. While employed there, he was exposed to asbestos and to natural diatomaceous earth (NDE), an ingredient in pipe-covering and hardboard insulation products. Kessinger blames his exposure to the NDE for his current lung problems. He brought this diversity action for damages against defendant-appellant Grefco, Inc., the manufacturer of some of the NDE sold to Union Asbestos, alleging that Grefco failed to warn him of the dangers of exposure to NDE.[2] Grefco, in turn, filed a third-party complaint for indemnity and contribution against third-party defendant-appellee Great Lakes Carbon Corporation (GLC), which manufactured and sold NDE to Union Asbestos until Grefco's parent, General Refractories Company (General), purchased the assets of GLC's Mining & Minerals Division and incorporated that division as Grefco.[3]

The district court granted summary judgment to GLC on Grefco's third-party complaint. Thereafter, in a bifurcated trial, the jury found Grefco liable for Kessinger's injuries and awarded Kessinger damages of $275,000, which the court reduced to $260,000 because of a prior settlement between Kessinger and Grefco of $15,000. The district court then denied Grefco's motion for judgment notwithstanding the verdict and its alternative motion for a new trial. This is Grefco's appeal, in which it claims that the district court committed numerous errors warranting reversal.

I.

We consider first Grefco's claim that the district court erred in granting summary judgment to GLC on Grefco's third-party complaint on the ground that Grefco expressly assumed responsibility for the acts of GLC as part of General's purchase of the Mining & Minerals Division. That deal went like this: On March 24, 1966, GLC agreed to sell General all of the assets of GLC's Mining & Minerals Division, the Great Lakes Carbon Corporation of Kentucky, and the Dicalite Company. The parties' agreements provided specifically that they were to be "construed in accordance with the laws of the Commonwealth of Pennsylvania" and that, at the close of the transaction, General was to deliver to GLC undertakings whereby General would assume and agree "to pay, perform and discharge all debts, obligations, contracts and liabilities" of the Mining & Minerals Division, excluding certain tax liabilities. The following April 6, before the

---

1. The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

2. Kessinger is an Illinois resident. Grefco is a Delaware corporation with its principal place of business in Torrance, California.

3. The district court invoked its ancillary jurisdiction over Grefco's third-party action against Delaware-incorporated GLC.

deal closed, General created Grefco for the purpose of taking title to the assets to be acquired from GLC, and on April 28, General assigned to Grefco its three March 24 sales contracts with GLC. On May 16, 1966, when the deal closed, General delivered to GLC the assumption-of-liability statements; GLC delivered the Mining & Minerals Division assets to Grefco; and Grefco delivered to GLC a receipt for those assets.

Grefco asserts initially that the district court erred in construing the asset sale agreements under Pennsylvania, as opposed to Illinois, law. It cites *Barron v. Kane & Roach, Inc.*, 79 Ill.App.3d 44, 34 Ill.Dec. 569, 398 N.E.2d 244 (1st Dist.1979), and our decision in *Travis v. Harris Corp.*, 565 F.2d 443 (7th Cir.1977), for the not altogether incorrect proposition that a choice of law provision in an asset sale agreement designating that the agreement should be construed under Pennsylvania law "does not preclude the application of Illinois law in a successor tort liability setting." The precise lesson of *Travis* (upon which the *Barron* court relied), however, is that while the choice of law provision may govern the interpretation of the contract, its legal effect and unrelated questions of tort law may nevertheless be governed by the law of the forum state, depending upon its choice of law rules. *See Travis*, 565 F.2d at 446. To the extent "construe" equals "interpret," then, Grefco's argument all but vanishes.

In any case, Grefco has not explained how the choice of law question is significant to the outcome of this case. Our research and review of the record reveal no relevant differences between the Illinois and Pennsylvania tort principles applicable to this appeal. Both states, of course, start with the proposition that a party is liable for its own torts and both also recognize the well-established rule that a corporation which buys all the assets of another corporation is not liable for the seller corporation's liabilities. *See Barron*, 34 Ill.Dec. at 571, 398 N.E.2d at 246; *Dawejko v. Jorgenson Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981). Moreover, both recognize an exception to this latter rule where the purchaser expressly or impliedly assumes the seller's liabilities. *See Barron*, 34 Ill.Dec. at 571, 398 N.E.2d at 246; *Conway v. White Trucks*, 692 F.Supp. 442, 449 (M.D. Pa.1988). In short, both states direct us to the assumption-of-liability provisions contained in the parties' purchase agreements,[4] which Grefco claims are ambiguous because "[n]owhere in any of the documents ... [are] the terms negligent claim or products liability claim used or mentioned...." Unfortunately for Grefco, the parties agreed that General would assume *all* of GLC's liabilities. We do not find any ambiguity in that wording.

Perhaps recognizing this, Grefco makes a last-ditch argument that it is not bound at all by the provisions of the asset sale agreements between General and GLC. In making this argument, Grefco notes the well-established propositions that holding companies and their subsidiaries are separate legal entities and that nonparties to a contract are neither bound by the contract nor (normally) entitled to performance under the contract. From this, Grefco concludes that "the principle of privity of contract is a precursor finding before the rights and obligations of a contract can be discussed as to a party."

---

**4.** Indeed, in *Bippus v. Norton Co.*, 437 F.Supp. 104 (E.D.Pa.1977), the court held that a corporation which purchased a tool business from another corporation expressly assumed responsibility for products liability actions that could have arisen against the seller for actions which occurred before the date of a sale and that, under Pennsylvania law, this entitled the seller corporation to summary judgment against a products-liability plaintiff. We are confident that an Illinois court would reach the same conclusion. For example, in *Freeman v. White Way Sign & Maintenance Co.*, 82 Ill.App.3d 884, 38 Ill.Dec. 264, 403 N.E.2d 495 (1st Dist.1980), the court held that the purchaser of the assets of another corporation could not be liable in a products liability action based on conduct which occurred before the date of sale in part because the parties' purchase agreement specifically provided that the seller would remain responsible for liabilities arising out of prior activities. According to the court, the parties' agreement "negated any assumption of responsibility" by the purchaser. *Id.*, 38 Ill.Dec. at 271, 403 N.E.2d at 502.

The principal problem with this argument is that it conveniently ignores the assignments through which Grefco took from its parent "all right, title and interest of [General] in and to [the agreements] dated March 24, 1966, between [General] and [GLC] ... in consideration for certain shares of Capital Stock ... of Grefco, Inc. ... *and an agreement assuming all liabilities which [General] has agreed to assume pursuant to the said [agreements]."* Grefco does not tell us why these assignments are worthless, and we do not think they are. That being the case, Grefco is as much a party to the March 24 agreements, via the assignments, as if it had executed the contracts as a party signatory. GLC, then, is entitled to Grefco's performance under those agreements (and, failing that, General's performance of those obligations). If it were otherwise, any corporation which purchased assets pursuant to an asset sale agreement could avoid its obligations under that agreement by creating a subsidiary and assigning its rights and obligations under the agreement to the subsidiary for consideration. In short, the district court did not err in granting summary judgment to GLC on Grefco's third-party complaint.

## II.

■ We next consider Grefco's arguments concerning whether Grefco had a duty to warn of dangers relating to NDE and, if so, whether Kessinger proved a failure to warn. Grefco first contends that it was entitled to judgment notwithstanding the verdict because there was insufficient evidence from which to conclude that it had a duty to warn. In diversity cases such as this one, we apply the forum state's standard for judgments notwithstanding the verdict and directed verdicts. *General Foam Fabricators v. Tenneco Chemicals, Inc.*, 695 F.2d 281, 285–86 (7th Cir.1982). According to the Illinois Supreme Court, "verdicts ought to be directed and judgments n.o.v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R.*, 37 Ill.2d 494, 510, 229 N.E.2d 504 (1967). Grefco cannot overcome this hurdle.

■ Grefco concedes that Kessinger's expert, Dr. Abrams, testified that, in his opinion, warnings should have been placed on NDE. And unlike Grefco, we cannot characterize Dr. Abrams' testimony as mere "hindsight." Dr. Abrams testified that in the late 1940s and early 1950s, he headed the Bureau of Adult Health in California, where the NDE that eventually was supplied to Union Asbestos was mined. Dr. Abrams also testified that while employed in that position, he made a number of trips to diatomaceous earth plants and learned from industry doctors and chest consultants, including the consultant for GLC, of a number of investigations concerning the presence of fibrosis of the lungs. As a result of these investigations, the California Bureau of Adult Health in 1952 distributed to the industry a bulletin indicating a danger from exposure to NDE. Although this may not convince Grefco that there was a known danger associated with NDE in 1953—the year Kessinger began working for Union Asbestos—it was enough for the jury to hang its hat on.[5]

---

**5.** Alternatively, Grefco argues that, even if it had a duty to warn of a danger of fibrosis of the lungs associated with NDE, Kessinger "already had ample warning of the danger" because from time to time Union Asbestos, apparently without explanation, furnished him with a respirator which he wore when clean filters were available. According to Grefco, Union Asbestos's issuance of this respirator apprised Kessinger "that there was some danger at [Union Asbestos's] facility which involved inhaling dust" and, therefore, the district court erred in determining that Grefco "owed a duty to Kessinger to place a warning on its product that dust inhalation could be hazardous to his health." Grefco emphatically asserts the truism that "no one needs notice of what he already knows."

This argument is specious. First, the record is devoid of any evidence concerning whether Union Asbestos ever told Kessinger that the purpose of the respirator was to prevent injury resulting from the inhalation of NDE dust. Second, this is not a case in which the plaintiff suffered a foreseeable injury after failing to avoid an open or obvious danger at his peril, such as a notoriously violent 8–year–old boy, *see*

Grefco next argues that the district court erred in failing to direct a verdict in its favor on the ground that Kessinger failed to meet its burden of going forward with sufficient evidence from which a jury could conclude that Grefco failed to place a warning on its NDE product. Although Kessinger and a former coworker, William Cochran, testified that they did not recall ever seeing a warning on Grefco's NDE bags, Grefco asserts that this was "negative" testimony "with no probative value and could not be considered on the issue of whether Grefco provided a warning on its products." This is nonsense. Grefco concedes that "negative" evidence is admissible if probative and that such evidence is probative if "the attitude of attention of the witness who offers negative testimony [is] such that he would perceive the warnings in the event that one is given." With that in mind, Kessinger testified that while employed at Union Asbestos he opened bags of "Dicalite"—the NDE—and put them into the manufacturing process; often his "basic" job was to open the bags. Kessinger testified that he read the bags and stated what he recalled was on them: the word dicalite, the manufacturer's name, and the city from which the bags came. In our view, this renders implausible Grefco's claim that Kessinger's "attitude of attention" was such that if a warning was on the bags he would not have noticed it. This is not a train/car collision case in which a witness for the plaintiff/car-driver testifies that he did not hear a train whistle when he was in his living room three miles away from the train crossing listening to the 1812 Overture at a high volume. Kessinger's testimony was probative, and any dispute Grefco had with it properly was determined by the jury.

Grefco argues finally that the entire record contains insufficient evidence from which to conclude that Grefco failed to warn of dangers from exposure to its product, apparently asking for judgment notwithstanding the verdict. We disagree, primarily because Grefco relies on its assertion that the "negative" testimony of Kessinger and Cochran was entitled to no weight,[6] a position we have rejected, and on other evidence of its own, none of which is unassailable. For example, Grefco notes that Edward Brannigan, a former GLC employee and now an employee of Grefco, testified that, after he had conducted an investigation into when warnings went on the bags of NDE, he could definitely say that in 1954 cautionary labels were on the bags. On cross-examination, however, Brannigan admitted that he testified in a 1983 deposition that he did not know of any warnings on the bags of NDE before 1966 or 1968. Grefco also points to the testimony of Richard Funk, a retired President of Grefco and a former employee of GLC, who testified that, based upon an investigation into the issue, the bags in which GLC had

*Wintercorn v. Rybicki,* 78 Ill.App.3d 179, 34 Ill. Dec. 29, 397 N.E.2d 485 (1979), an unconcealed hole, *Mazzeffi v. Schwanke,* 52 Ill.App.3d 1032, 10 Ill.Dec. 846, 368 N.E.2d 441 (1977), *cert. denied,* 439 U.S. 869, 99 S.Ct. 199, 58 L.Ed.2d 181 (1978), a rut in a driveway of which the plaintiff should have been aware from previous visits, *Helfenbein v. Malzahn,* 24 Ill.App.3d 616, 321 N.E.2d 394 (1974), or a visible patch of ice, *Lorek v. Hollenkamp,* 144 Ill.App.3d 1100, 99 Ill.Dec. 232, 495 N.E.2d 679 (2d Dist.1986). To the contrary, the jury found that Grefco and its predecessor manufacturer knew or had reason to know that exposure to NDE could cause fibrosis of the lungs but chose not to warn of the hazard. This was hardly an "obvious" danger, as Grefco has argued vigorously throughout this case, and Grefco does not assert that Kessinger knew specifically of it. Thus, this was a situation of "unequal knowledge" and, on the facts of this case, Grefco cannot rely on Union Asbestos's issuance of a respirator to Kessinger, without doing anything further, to "make its product safe." *See Hammond v. North American Asbestos Corp.,* 97 Ill.2d 195, 73 Ill.Dec. 350, 357–58, 454 N.E.2d 210, 217–18 (Ill.1983).

6. For the very serious student of the standards for evaluating negative evidentiary weight problems, we suggest a plunge into the clear waters of *Blackburn v. State,* 31 Ariz. 427, 254 P. 467 (1927). At page 472 of the Pacific Reporter volume, there is a truly skull-cracking analysis:

It is a rule of evidence deduced from the experience of mankind and supported by reason and authority that positive testimony is entitled to more weight than negative testimony, but by the latter term is meant negative testimony in its true sense and not positive evidence of a negative, because testimony in support of a negative may be as positive as that in support of an affirmative.

No more need be said.

packaged NDE had a warning on it. Funk was candid enough to admit on cross-examination, however, that his testimony was not based upon personal knowledge, but on what others told him. In short, Grefco's evidence did not "clearly establish" that there were warnings on the NDE product to which Kessinger was exposed. To the contrary, the record viewed as a whole provides ample support for the jury's verdict.

## III.

Finally, we consider briefly Grefco's assertion that the district court "improperly instructed the jury by allowing it to consider elements of damages which were not supported by the evidence." Specifically, Grefco asserts that there was no support in the record for the district court's instructions concerning past and future medical expenses and the aggravation of a preexisting condition, and that the court erroneously allowed the jury to consider a mortality table in assessing damages. The problem with this portion of Grefco's appeal starts with the fact that we have no way of knowing what amount the jury awarded for any particular element of damages. Grefco's verdict form, which is the one that was given to the jury, did not ask the jury to itemize its damage award, nor did Grefco ask that any special interrogatories be given to the jury. The problem continues with the ample evidence in support of the jury's award, which Grefco chooses to mischaracterize, overlook, or discard, as it has done with much of the other evidence in this case. In short, we refuse to disturb the jury's award of damages.

For these reasons, the judgment against Grefco and in favor of Kessinger is

AFFIRMED.