NOTICE: Under Supreme Court Rule 367 a party has 21 days after the

filing of the opinion to request a rehearing. Also, opinions are

subject to modification, correction or withdrawal at anytime prior

to issuance of the mandate by the Clerk of the Court. Therefore,

because the following slip opinion is being made available prior to

the Court's final action in this matter, it cannot be considered

the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of

Decisions in the Official Reports advance sheets following final

action by the Court.

                                    

                 Docket No. 79809--Agenda 19--May 1996.

      OTTO KESSINGER et al., Appellees, v. GREFCO, INC., Appellant.

                     Opinion filed October 18, 1996.

                                    

     JUSTICE McMORROW delivered the opinion of the court:

     In this appeal we are asked to determine whether the appellate

court misapplied the doctrine of offensive collateral estoppel when

it reversed a jury verdict in favor of defendant and remanded the

cause for a new trial. The seven plaintiffs are four male employees

of Union Asbestos and Rubber Company (UNARCO) or its successor,

Owens-Corning Fiberglas Corporation, and the wives of three of the

employees. Defendant, Grefco, Inc., and its predecessor supplied

diatomaceous earth, a type of silica, to UNARCO and Owens-Corning

for industrial uses, including the manufacture of hardboard

insulation and pipe covering. During their employment in the 1950s

and 1960s, the four male plaintiffs were exposed to both asbestos

and diatomaceous earth at UNARCO's plant in Bloomington, Illinois.

They filed suit claiming, inter alia, that Grefco had breached a

duty to warn them of the risk of contracting pulmonary fibrosis

from inhaling dust from diatomaceous earth. The female plaintiffs

sought damages based on loss of consortium.

     Before trial, plaintiffs moved the trial court to bar Grefco

from claiming that pulmonary fibrosis cannot be caused by exposure

to natural diatomaceous earth. In support, plaintiffs cited

Kessinger v. Grefco, Inc., No. 85--3092 (C.D. Ill. 1987)

(unpublished order), aff'd, 875 F.2d 153 (7th Cir. 1989)

(Kessinger). In Kessinger, a UNARCO employee from the same

Bloomington plant that employed plaintiffs recovered damages based

on the theory that he developed pulmonary fibrosis from exposure to

products or dust containing diatomaceous earth, and that Grefco

breached a duty to warn of such risk, proximately causing the

employee's injuries. In the instant case, the trial court granted

plaintiff's request to bar Grefco from contesting that diatomaceous

earth could cause silicosis, the type of pulmonary disease that can

result from exposure to diatomaceous earth. The trial court also

granted plaintiff's motion to preclude Grefco from arguing that its

predecessor, rather than Grefco, was responsible for the sales of

diatomaceous earth to the UNARCO plant where plaintiffs worked.

However, the trial court denied plaintiffs' subsequent requests to

additionally estop Grefco from arguing to the jury that natural

diatomaceous earth could not cause fibrosis because plaintiffs were

not miners with long-term exposure to the earth dust but instead

were employed at an "end use" manufacturing site where exposure to

the diatomaceous earth was limited in duration and intensity.

     Following trial, the jury returned a verdict in favor of

Grefco and against all plaintiffs. In their answers to special

interrogatories, the jury found that none of the four male

plaintiffs suffered from silicosis. Plaintiffs appealed, asserting

four instances of trial error. The appellate court held that

reversible error occurred with respect to the applicability of the

collateral estoppel doctrine and remanded for new trial, observing,

"Some of the error that resulted has been waived, but its total

effect requires the grant of a new trial." 275 Ill. App. 3d 275,

285.

     We granted Grefco's petition for leave to appeal (155 Ill. 2d

R. 315) and granted the Illinois Manufacturers' Association leave

to file an amicus curiae brief in support of Grefco. 155 Ill. 2d R.

345. For the reasons that follow, we reverse the judgment of the

appellate court.

                                BACKGROUND

     The male plaintiffs' employer, UNARCO, manufactured insulation

products. Trial evidence revealed that from the 1950s to the early

1970s, a combination of asbestos and diatomaceous earth were used

in the manufacture of some of these products. The four male

plaintiffs had worked for the plant for differing periods of time.

The longest employment of any of the male plaintiffs was

approximately five years, from 1965 to 1970. The other three

employees had worked for the plant for considerably shorter periods

ranging from a few months to approximately a year. Grefco was

responsible for the sale of diatomaceous earth, packaged under the

label "Dicalite," and did not supply any asbestos or other

products. The instant appeal of Grefco does not involve asbestos-

related injuries.

     In their complaints, plaintiffs alleged that they developed

pulmonary fibrosis from workplace exposure to diatomaceous earth.

At trial, plaintiffs identified silicosis as the specific type of

pulmonary fibrosis for which plaintiffs sought damages from Grefco.

Silicosis was defined at trial as a scarring of the lungs caused by

inhalation of silica, a type of mineral dust found in diatomaceous

earth. According to plaintiffs, they developed silicosis by

inhaling dust from the diatomaceous earth that Grefco supplied in

50-pound bags to the Bloomington UNARCO plant. The evidence

indicated that some of the bags of diatomaceous earth carried

warnings while others did not. According to plaintiffs, Grefco

proximately caused their illnesses by negligently breaching a duty

to warn end users, such as plaintiffs, of the risks of developing

silicosis by inhaling dust from diatomaceous earth.

     Dr. Herbert Abrams, board certified in preventative medicine

and public health, testified for plaintiffs. Based on his study of

the medical records, chest X rays, and CAT scans of the four male

plaintiffs, he believed that all four had developed both asbestosis

and silicosis.

     Dr. Robert Jones and Dr. David Cugell testified for Grefco.

Dr. Cugell is director of the pulmonary function laboratory at

Northwestern Memorial Hospital in Chicago. Dr. Jones is a professor

at Tulane Medical School who limits his practice to lung diseases.

Both doctors examined the chest X rays and CAT scans of the four

male plaintiffs. They concluded that almost all of the fibrosis

shown thereon began in the lower part of the lungs, thereby

indicating the presence of asbestos-related conditions rather than

silicosis. Drs. Jones and Cugell testified that they found no

evidence of silicosis on any of the X rays.  

     The former plant manager of UNARCO, Edward Weaver, testified

in Grefco's defense. According to Weaver, workers at the plant were

given medical examinations out of concern for asbestosis, but he

was never aware that there was a hazard associated with breathing

diatomaceous earth dust. Other evidence produced by Grefco

indicated that natural diatomaceous earth poses no significant

health hazards outside the mining and milling processes in which

exposure to dust is prolonged and continuous.

     According to Grefco, exposure to natural diatomaceous earth

dust could cause silicosis in miners and those involved in the

mining and milling process only if inhalation of the dust was

intensive and continuous for long periods of time. In contrast, end

users of the product, such as those persons involved in

manufacturing the insulation products from the diatomaceous earth

at the UNARCO plant, were highly unlikely to contract silicosis,

particularly if their exposure to the dust was infrequent or of

short duration.

     Grefco also presented evidence distinguishing between the

health risks associated with the natural form of diatomaceous

earth, which Grefco supplied to UNARCO, and the calcined form,

which Grefco did not supply to UNARCO. According to the evidence

presented, calcined diatomaceous earth results from a process of

heating the earth at very high temperatures, which partially

converts the earth to a crystalline substance. When the calcined

diatomaceous earth is cut for industrial use, the resulting dust

apparently can pose a significant health hazard to persons exposed

for a period of two to five years.

     In addition to its primary defense that plaintiffs did not

have silicosis and that Grefco did not breach a duty to warn of

dangers resulting from natural diatomaceous earth dust, Grefco

raised the affirmative defense of intervening causation. This

defense was based on the theory that at the time the four men

worked at the UNARCO plant, their employers knew or should have

known that the plant was using "fibrotic raw materials" and that

workers' exposure to the materials should have been minimized by

the taking of adequate safety measures at the workplace. According

to Grefco, UNARCO's acts or omissions in regard to safety measures

were not foreseeable by Grefco and constituted the intervening

proximate cause of plaintiffs' injuries.

     At the request of Grefco, the trial court tendered to the jury

special interrogatories for each male plaintiff asking whether the

jury found that the plaintiff had developed silicosis and, if so,

whether his silicosis was proximately caused by exposure to

diatomaceous earth. Each of the four special interrogatories asked

the following questions:

               "A. Do you find that [name of plaintiff] has

          silicosis?

               Yes_____           No_____

               B. Do you find [name of plaintiff]'s exposure to

          diatomaceous earth supplied by *** Grefco, Inc. to the

          Unarco plaint in Bloomington, Illinois was a proximate

          cause of his silicosis?

               Yes_____         No_____"

     In each of the four tendered special interrogatories, the jury

responded "No" in answer to both questions. The jury returned a

general verdict in favor of Grefco and the circuit court entered

judgment thereon.

     On appeal to the appellate court, plaintiffs (1) challenged

the trial court's rulings with respect to Grefco's affirmative

defense of intervening causation and related jury instructions; (2)

argued that the court erred in its ruling on the scope of the

collateral estoppel issues; (3) charged error in the submission of

the special interrogatories to the jury; and (4) contended that

Grefco should have been barred from using photographs at trial that

were not disclosed until the day before trial. With the exception

of the collateral estoppel issue, the appellate court found no

reversible error, particularly in light of the jury's clear

response to the special interrogatories that found none of the

plaintiffs had developed silicosis. However, the appellate court

held that a new trial should be granted because of Grefco's

"continued presentation of the evidence barred by operation of the

doctrine of collateral estoppel." 273 Ill. App. 3d at 284.

     The record in the instant appeal includes 85 volumes spanning

more than 17,000 pages, much of which consists of pleadings,

motions, and discovery material that was generated by this complex

multiparty litigation. As noted, plaintiffs raised only four

instances of alleged trial error in their appeal. Three of the four

were resolved against plaintiffs in the appellate court and are not

under review in the instant appeal.

                                 ANALYSIS

     In its appeal before this court, Grefco advances two grounds

for reversing the judgment of the appellate court. Grefco argues

that the appellate court's application of the doctrine of offensive

collateral estoppel is erroneous and contradicts recent precedent

of this court and the appellate court. E.g., Herzog v. Lexington

Township, 167 Ill. 2d 288, 296 (1995); Van Milligan v. Board of

Fire & Police Commissioners, 158 Ill. 2d 85, 95 (1994); In re

Owens, 125 Ill. 2d 390 (1988); Betts v. Manville Personal Injury

Settlement Trust, 225 Ill. App. 3d 882 (1992). Alternatively,

Grefco contends that the appellate court erred in granting

plaintiffs a new trial because the special interrogatory answers

reflect the jury's finding that none of the plaintiffs had been

injured by any act or omission of Grefco. Therefore, Grefco

contends, any alleged trial errors did not result in prejudice to

plaintiffs or necessitate a new trial.

                                     I

     We begin our analysis by considering the significance of the

jury's special interrogatory answers to the judgment in this case.

To recover legal damages, plaintiffs had the burden of proving by

the preponderance of evidence that Grefco owed them a duty, that

Grefco breached that duty, and that plaintiffs were injured as a

proximate result. The jury explicitly found that none of the four

male plaintiffs suffered from silicosis, the only disease in issue

that was identified by plaintiffs as potentially resulting from

inhalation of diatomaceous earth dust. The record contains

sufficient evidence to support the jury's findings, and plaintiffs

do not contend that either the special interrogatory answers or the

general verdict is against the manifest weight of the evidence.

Therefore, plaintiffs failed to prove an essential element of their

causes of action against Grefco.

     In their appeal to the appellate court, plaintiffs claimed

error in the wording of the special interrogatories. However,

plaintiffs did not argue that the interrogatories were

substantively improper or that they failed to address an ultimate

issue of material fact. See 735 ILCS 5/2--1108 (West 1992). The

appellate court held that the special interrogatories "were very

clear because of the evidence" and that no error resulted from the

submission of the special interrogatories to the jury. 273 Ill.

App. 3d at 281. The appellate court further noted that the special

interrogatory answers were consistent with the general verdict

favoring Grefco. In the instant appeal, plaintiffs have not renewed

their challenge to the special interrogatories. Therefore, the

propriety of the special interrogatories is not in dispute.

     Notwithstanding the jury's finding that plaintiffs had not

sustained any compensable injury, the appellate court majority

reversed the judgment for Grefco and remanded for new trial. The

appellate court held that the jury's answers to special

interrogatories should not be given controlling effect in the case

at bar because of error "aris[ing] from the collateral estoppel

issue and closely related matters." 273 Ill. App. 3d at 282. The

appellate court concluded that plaintiffs' right to a fair trial

had been undermined when Grefco presented evidence and argument

that should have been precluded by the collateral estoppel effect

of a prior adjudication involving Grefco and a different plaintiff,

Kessinger v. Grefco, Inc., 875 F.2d 153 (7th Cir. 1989).

     We reject the appellate court's reasoning with respect to the

dispositive effect to be given the special interrogatories and the

proper scope of collateral estoppel. In our view, the jury's

specific findings that the male plaintiffs did not suffer from

silicosis established that each plaintiff failed to establish his

prima facie cause of action. No plaintiff was found by the jury to

have been injured by tortious acts or omissions of Grefco.

Accordingly, any perceived error in the trial court's discretionary

ruling on collateral estoppel presumably was harmless. See Herzog

v. Lexington Township, 167 Ill. 2d 288, 298 (1995) ("we question

the appellate court's reversal of the jury verdict in favor of

defendant, in light of the special interrogatory answered by the

jury finding that plaintiff was the sole proximate cause of his

injuries"). We do not, however, decide this appeal solely by

confirming the controlling nature of the jury's answers to special

interrogatories. As noted, the appellate court held that the

otherwise controlling nature of the special interrogatories did not

negate error arising from the circuit court's application of the

doctrine of collateral estoppel. For that reason, and because the

appellate opinion in the instant case appears to conflict with

precedent of this court and other appellate decisions, we consider

the proper scope to be given the collateral estoppel doctrine in

the case at bar.

                                    II

     According to Grefco, the appellate court misapplied the

doctrine of offensive collateral estoppel by bestowing unduly broad

preclusive effect to the verdict in Kessinger v. Grefco, Inc., 875

F.2d 153 (7th Cir. 1989), a case with significantly different facts

and issues. In Kessinger, an employee of the same UNARCO plant that

employed the instant plaintiffs recovered damages for pulmonary

fibrosis caused by his exposure to natural and calcined

diatomaceous earth over the course of approximately 15 years of

employment. The Seventh Circuit Court of Appeals affirmed the

jury's verdict as not against the weight of the evidence produced

in that case. The federal court's opinion contains few facts

pertinent to the Kessinger plaintiff's medical condition or the

nature and intensity of his exposure to dust from diatomaceous

earth. The issue in the Kessinger opinion that explores Grefco's

liability under products liability law is whether Grefco owed the

plaintiff a legal duty under the facts to warn of dangers

associated with natural diatomaceous earth, and whether breach of

such duty had been proven. With respect to the question of whether

Grefco was aware that a known danger associated with diatomaceous

earth existed during the relevant times, the Seventh Circuit

remarked that the evidence produced at trial was "enough for the

jury to hang its hat on." Kessinger, 875 F.2d at 156. Additionally,

the court held that the record in that case supported the inference

that Grefco had breached its duty to warn plaintiff of the risk of

inhaling diatomaceous earth dust, based on Grefco's alleged failure

to include warnings on bags of Dicalite that were furnished to

UNARCO. Kessinger, 875 F.2d at 157-58.

     In the instant case, plaintiffs filed pretrial motions

requesting the circuit court to limit Grefco's evidence by

according collateral estoppel effect to the verdict in Kessinger.

Initially, plaintiffs only sought to preclude Grefco from denying

that exposure to diatomaceous earth could cause silicosis, that

Grefco supplied the substance in issue to UNARCO, and that Grefco,

rather than Grefco's predecessor, was the party legally responsible

for any recovery of plaintiffs. Grefco did not challenge the

estoppel effect to be given the Kessinger case with respect to

these three issues and the circuit court granted plaintiffs'

motion.

     Thereafter, plaintiffs filed supplemental motions in limine

seeking to greatly expand the court's previous ruling on the

estoppel issue. Plaintiffs argued that Grefco should not be

permitted to argue or present evidence that silicosis could not

develop in end users, such as plaintiffs, who worked in plants that

used natural diatomaceous earth as an ingredient in other products.

Based on materials produced during discovery, plaintiffs were aware

that Grefco intended to assert that the risk of silicosis from

exposure to natural diatomaceous earth was exceedingly slight for

persons working at sites like the Bloomington UNARCO plant and that

the more likely occurrence of silicosis would be in miners and

workers who were extensively exposed, over 30 to 40 years, to the

dust given off in the mining and milling processes. Grefco's

experts also distinguished between natural diatomaceous earth and

the calcined form, in which high-temperature baking of the earth

results in the formation of cristobalite, a crystalline form of

silica. According to Grefco's experts, the natural form of

diatomaceous earth does not pose a significant health hazard,

particularly where exposure is not of intensive, continuous, and

long-term duration. The calcined form, however, could pose a

significant health hazard to persons exposed for periods estimated

by certain authorities as ranging from two to five years. Grefco

did not supply calcined diatomaceous earth to UNARCO.

     In ruling on plaintiffs' supplemental motions in limine on the

estoppel issues, the circuit court considered relevant pleadings

and testimony from the Kessinger trial as well as case law,

including Betts v. Manville Personal Injury Settlement Trust, 225

Ill. App. 3d 882 (1992). The circuit court denied plaintiffs'

supplemental requests to expand the scope of the collateral

estoppel. The trial court held that the general verdict in

Kessinger could not be used to prevent Grefco from asserting that

the nature, intensity, and duration of plaintiffs' exposure to

natural diatomaceous earth in the case at bar was insufficient to

cause silicosis.

     In reversing judgment for Grefco and remanding for new trial,

the appellate court in the instant case stated that Grefco "put on

evidence which violated the collateral estoppel created by

Kessinger" and that Grefco "continually violated the estoppel." The

appellate court did not, however, articulate the nature or scope of

"the estoppel" to which it referred. Indeed, no single controlling

issue based on the same facts common to both Kessinger and the

instant case is delineated in the appellate court's opinion. As a

result, we cannot discern the exact ground on which the appellate

court's reasoning rests.

     In their brief, plaintiffs posit that "[w]hat the estoppel

order should accomplish is to estop Grefco from a position before

a jury that the diatomaceous earth sold to Bloomington could never

result in disease." It is evident from the record that the circuit

court's order accomplished exactly that. Grefco did not deny that

diatomaceous earth such as that sold to UNARCO could never result

in disease. What Grefco contested was the likelihood of these

plaintiffs contracting silicosis from their relatively minor

exposure to natural diatomaceous earth in the course of their

employment at UNARCO.

     The basic theory behind principles of collateral estoppel is

that if two parties undergo a full and fair trial that results in

a final judgment, neither party may seek a different result upon

the same facts and issues in a subsequent lawsuit. When properly

applied, collateral estoppel or issue preclusion promotes fairness

and judicial economy by preventing relitigation in one suit of an

identical issue already resolved against the party against whom the

bar is sought. Defensive use of collateral estoppel occurs when a

defendant invokes the doctrine to prevent a plaintiff from

asserting a claim the plaintiff has previously litigated and lost.

See In re Owens, 125 Ill. 2d 390, 397 (1988). Offensive use of

collateral estoppel "occurs when a plaintiff seeks to foreclose a

defendant from litigating an issue the defendant has previously

litigated unsuccessfully in another action." Owens, 125 Ill. 2d at

397.

     This court has repeatedly noted that unrestrained use of

offensive collateral estoppel can frustrate judicial efficiency and

deprive a defendant of a fair trial. E.g., Herzog v. Lexington

Township, 167 Ill. 2d 288, 296 (1995); Van Milligan v. Board of

Fire & Police Commissioners, 158 Ill. 2d 85, 95 (1994); Owens, 125

Ill. 2d at 398-99. Accordingly, this court has "caution[ed] against

the indiscriminate application of offensive collateral estoppel

where there is no mutuality of parties." Herzog, 167 Ill. 2d at

295-96. Traditionally, one party could seek collateral estoppel

against a party opponent only if both had been parties to the prior

lawsuit and thereby bound by the outcome of that suit; this

requirement was referred to as "mutuality." Under the mutuality

requirement, plaintiffs in the instant case would not have been

able to successfully raise a collateral estoppel bar because they

were not parties to or bound by the Kessinger decision. In 1979,

however, this court eliminated the mutuality requirement (Illinois

State Chamber of Commerce v. Pollution Control Board, 78 Ill. 2d 1

(1979)) and set forth the minimum threshold elements that must be

satisfied before the circuit court may conclude that a prior

adjudication precludes litigation of an issue in the case before

it: (1) the issue decided in the prior suit is identical with the

one presented in the pending suit; (2) there was a final judgment

on the merits in the prior adjudication; and (3) the party against

whom the estoppel is asserted was either a party or in privity with

a party in the prior lawsuit. Illinois State Chamber of Commerce,

78 Ill. 2d at 7; accord Herzog, 167 Ill. 2d at 295; Owens, 125 Ill.

2d at 399-400.

     In the instant case, the second and third elements are not in

dispute, but Grefco strongly contests the existence of a common and

controlling issue shared by the instant case and Kessinger. This

court has long recognized the importance of the existence of an

identical issue to the operation of issue preclusion:

               " `To operate as an estoppel by verdict it is

          absolutely necessary that there shall have been a finding

          of a specific fact in the former judgment or record that

          is material and controlling in that case and also

          material and controlling in the pending case. It must

          also conclusively appear that the matter of fact was so

          in issue that it was necessarily determined by the court

          rendering the judgment interposed as a bar by reason of

          such estoppel. If there is any uncertainty on the point

          that more than one distinct issue of fact is presented to

          the court the estoppel will not be applied, for the

          reason that the court may have decided upon one of the

          other issues of fact.' " Lange v. Coca-Cola Bottling Co.

          of Chicago, Inc., 44 Ill. 2d 73, 75 (1969), quoting

          Hoffman v. Hoffman, 330 Ill. 413, 418 (1928).

     In Lange, this court reversed a summary judgment entered in

favor of a plaintiff who sought to bar defendant from contesting

liability in a personal injury action arising out of a collision

between the parties' vehicles. The basis of the estoppel was a

prior adjudication in which the defendant corporation had sued the

plaintiff for damages to the defendant's truck and lost. This court

held that the general judgment against the defendant corporation in

the prior action could not be used to decide the issue of liability

in the plaintiff's subsequent personal injury lawsuit against the

same defendant, because the earlier judgment contained no specific

findings and could have resulted from the trial court's

determination that neither party was negligent, that both were, or

that only the corporation was negligent. See also Herzog, 167 Ill.

2d at 297 (it is "error [to apply] collateral estoppel where it was

impossible to determine on which issue the plaintiff prevailed in

the previous case").

     In the case at bar, both the appellate court majority and

plaintiffs fail to identify the material and controlling factual

finding that was conclusively resolved against Grefco in Kessinger

and which is also the exact and controlling issue central to the

instant litigation. The evidence in the Kessinger trial included

testimony revealing that the plaintiff, a 15-year employee of

UNARCO, had been exposed to dust from both natural and calcined

diatomaceous earth. The general verdict did not, however, reveal

whether the jury found that only calcined or only natural

diatomaceous earth caused the plaintiff's illness, or whether both

forms of the earth contributed to the plaintiff's pulmonary

fibrosis. In the instant case the trial court ruled, and Grefco

agreed, that the result in Kessinger precluded Grefco from

asserting to the jury only that pulmonary fibrosis could never

result from exposure to diatomaceous earth. Grefco did not violate

this ruling and did not deny the possibility that a person could

contract silicosis from inhaling dust from diatomaceous earth. The

circuit court did not grant preclusive effect to the general

verdict in Kessinger, however, on the separate and distinct issue

of whether plaintiffs in the case at bar had sustained the type,

intensity, and duration of exposure to diatomaceous earth that

would result in a significant risk of disease. Nor did the circuit

court prohibit Grefco from distinguishing in the instant case

between the risks associated with calcined and natural diatomaceous

earth, or between the relative risks of miners' and nonminers'

exposure to diatomaceous earth. After reviewing the record we

conclude that the circuit court's rulings on the scope of

collateral estoppel were correct.

     The appellate court merely pronounces that the evidence in

Kessinger "indicated that plaintiff had much the same exposure [to

diatomaceous earth dust] as did the male plaintiffs here." 273 Ill.

App. 3d at 282. However, we reject as unfounded the notion that the

Kessinger plaintiff suffered "much the same" exposure as the male

plaintiffs in the case at bar. The plaintiffs in both cases had

different periods of employment during which they were exposed.

They also had different duties and activities at the plant. The

plaintiffs did not share medical histories or current medical

conditions. Presumably, the appellate court would equate the

instant plaintiffs' distinct circumstances and medical conditions

with those of the plaintiff in Kessinger simply because the

plaintiffs in the two lawsuits worked at the same UNARCO plant and

were exposed at some time to diatomaceous earth supplied by Grefco.

That the two cases may share general similarities does not support

the conclusion that the Kessinger verdict worked an estoppel of the

breadth imagined by the appellate court and plaintiffs in the case

at bar.

     The appellate court majority also implies error in certain

remarks Grefco made during opening statement and in summation.

These remarks underscored the great number of years of intensive

exposure to natural diatomaceous earth that is required before

silicosis would develop, most likely in the mining and milling

settings as distinct from "end use" manufacturing plants. However,

the record reveals that the parties engaged in extensive pretrial

preparation of the case and presented, without objections from

either side, detailed opening statements to assist the jury in

understanding their respective positions. There is no indication in

the record that the jury was confused or misled by the parties'

arguments. Moreover, Grefco's opening remarks and its summation

were supported by evidence properly admitted at trial. Grefco

presented expert witnesses who stated their opinions that the type

of exposure to natural diatomaceous earth occurring in the instant

case was unlikely to produce disease and in fact had not resulted

in silicosis in plaintiffs. Plaintiffs presented their expert

witness who expressed his belief that plaintiffs had both

asbestosis and silicosis. Therefore, the jury was presented with

evidence specific to the facts of the instant case. Some of the

evidence was medical and scientific in nature, bearing on the

health hazards associated with diatomaceous earth. Grefco was

properly allowed to present evidence and argue that end users of

natural diatomaceous earth ordinarily did not face a significant

health hazard, particularly if they did not inhale the dust over a

long period of time.

     Because it is evident that the material issues of fact with

respect to plaintiffs' alleged injuries were not adjudicated by the

Kessinger case, Grefco should not have been barred from litigating

or contesting whether a particular employee at the Bloomington

plant was likely to develop silicosis under the specific

circumstances of that employee's inhalation of diatomaceous earth

dust. That a jury awarded damages to the Kessinger plaintiff, who

sustained injuries following a lengthy exposure to fibrotic

material including natural and calcined diatomaceous earth, bears

little relevance to this or other litigation involving different

plaintiffs with different disease pathologies, different exposure

periods to diatomaceous earth, and different issues that might be

presented in defense. Allowing plaintiffs in the instant case to

benefit from another individual's recovery of damages under

dissimilar circumstances is comparable to permitting patients of a

doctor found liable for malpractice in one patient's surgery to

estop the doctor from fully defending against malpractice suits of

the other patients who had the same operation.

     It is important to bear in mind that issues of causation in a

personal injury or products liability case are fact-specific and of

limited relevance beyond the circumstances of the particular

litigation in which such issues are resolved. See, e.g., Marlow v.

American Suzuki Motor Corp., 222 Ill. App. 3d 722, 736-37 (1991),

quoting Goodson v. McDonough Power Equipment, Inc., 2 Ohio St. 3d

193, 203, 443 N.E.2d 978, 987 (1983) ("It would not be prudent to

raise a decision made by one jury in the context of one set of

facts to the standard under which all subsequent cases involving

separate underlying factual circumstances are judged"). Not all who

are exposed to a substance that can cause pulmonary fibrosis

develop a disease. Even if the type or duration of exposure is

substantially the same, as where two individuals worked side-by-

side doing the same tasks for the same length of time, one may

remain disease free while the other does not.

     Problems inherent in attempting to apply collateral estoppel

in "exposure" cases are illustrated in In re Agent Orange Product

Liability Litigation, 818 F.2d 145 (2d Cir. 1987). In that case, a

plaintiffs' class of Vietnam War veterans claiming exposure to

Agent Orange asserted a common question regarding whether Agent

Orange could cause disease. According to plaintiffs' argument, the

jury could decide "generic causation," i.e., whether Agent Orange

could cause disease, as an issue common to all class members'

cases. The federal court rejected the argument, noting that the

"relevant question *** is not whether Agent Orange has the capacity

to cause harm, the generic causation issue, but whether it did

cause harm and to whom. That determination is highly

individualistic ***." In re Agent Orange, 818 F.2d at 164-65.

Similarly, in the case at bar the relevant question is not whether

natural diatomaceous earth has the capacity to cause harm or

whether it did or might have caused harm to another plaintiff, but

whether it did in fact cause harm to these plaintiffs. See also

Zurich Insurance Co. v. Raymark Industries, Inc, 118 Ill. 2d 23,

45-48 (1987); Morrissy v. Eli Lilly & Co., 76 Ill. App. 3d 753, 761

(1979) (mere exposure to potentially toxic product does not prove

that the substance caused disease).

     Finally, we note that in Betts v. Manville Personal Injury

Settlement Trust, 225 Ill. App. 3d 882 (1992), relied upon by the

circuit court in the instant case and which the dissenting justice

found controlling, Grefco was a defendant and third-party plaintiff

and UNARCO was a third-party defendant in litigation involving the

injured plaintiffs' exposure to asbestos and diatomaceous earth. In

the section of the Betts court's opinion relevant to the doctrine

of collateral estoppel, the appellate court held that the trial

court erred in granting broad preclusive effect to the general

verdict in Kessinger, which thereby impaired Grefco's right to

present a meaningful defense. Specifically, the circuit court in

Betts, attempting to apply the Kessinger verdict to the case before

it, erroneously instructed the jury that they were to apply as

binding certain "findings of fact and law." These findings included

the statement that fibrosis of the lungs is caused by diatomaceous

earth, that Grefco knew of the risks, and that Grefco "was

negligent in failing to warn of the hazards of exposure to

diatomaceous earth, and in particular, the risk of fibrosis of the

lungs by the failure to place warnings on bags of diatomaceous

earth supplied to Bloomington from 1953 to 1967." Betts, 225 Ill.

App. 3d at 926. The appellate court rejected the circuit court's

use of collateral estoppel and explained at length why the

Kessinger verdict was not preclusive of many of the issues

presented in the Betts trial, including the failure to warn theory.

Betts, 225 Ill. App. 3d at 927-28.

     Application of the doctrine of collateral estoppel must be

narrowly tailored to fit the precise facts and issues that were

clearly determined in the prior judgment. See, e.g., Lange, 44 Ill.

2d at 75. Even where the threshold elements of the doctrine are

satisfied, and an identical common issue is found to exist between

a former and current lawsuit, collateral estoppel must not be

applied to preclude parties from presenting their claims or

defenses unless it is clear that no unfairness results to the party

being estopped. For example, in Van Milligan, 158 Ill. 2d 85, this

court acknowledged that the threshold requirements might have been

satisfied in a case in which a Chicago police officer was fired

after he was found liable for violating the civil rights of a

citizen in connection with an arrest. This court observed that "it

would be highly unfair to the police officer *** if offensive

collateral estoppel effect were given to the factual findings of

the Federal civil rights suit in this subsequent disciplinary

proceeding in which the police chief seeks the officer's discharge.

We believe that the police officer's substantial interest in a full

hearing, where the grounds for any discipline imposed will be fully

and fairly litigated, militate against the application of

principles of collateral estoppel in this case." Van Milligan, 158

Ill. 2d at 96-97. See also In re Owens, 125 Ill. 2d at 400-01.

     We conclude that the circuit court's ruling on the estoppel

effect to be accorded the Kessinger verdict was well within the

scope of its discretion. Accordingly, we reverse the appellate

court's judgment granting plaintiffs a new trial and affirm the

circuit court's judgment on the jury's verdict.

Appellate court judgment reversed;

                                         circuit court judgment affirmed.

                                                                         

     JUSTICE HARRISON, specially concurring:

     I agree with the result reached by the majority for the

reasons stated in part I of its analysis. Because the jury

determined that the plaintiffs did not suffer from silicosis, the

appellate court should not have reversed and remanded for a new

trial based on the circuit court's ruling on collateral estoppel.

The collateral estoppel question had no effect on the outcome of

the case and therefore should not have been addressed by either the

appellate court or this court.